OSCAR FREDERICK, AND I. N. DENNIS, EXECUTOR OF A. C. HORTON, v. M. C. HAMILTON.
F. SCHULTZE AND HORTON'S EXR. v. M. C. HAMILTON.

1. It is not error in the court below to direct the jury to amend their verdict as to a clerical omission or to express clearly their intention.
2. The withdrawal from the district surveyor's office, in 1839, of a located certificate and of all written evidence of the location thereof, and failing to return the same for ten years, are facts from which an abandonment of the location may be presumed.

3. Possession of land by one person is not of itself evidence of the right or claim of another in the land ; and in the absence of notice to the junior locator that the occupants held under the elder claim, such possession does not affect the right of the junior claimant.

4. The prosecution of an unsuccessful suit for *mandamus* against a surveyor to compel him to make a survey upon an irregular file or location does not excuse a failure to perfect such file or location into a survey under the act of tenth of February, 1852, "concerning surveys of land."

5. It is not error to exclude a judgment relating to land offered in evidence and not recorded in the county where the land is situated.

6. A *mandamus* suit against the Commissioner of the Land Office is not notice of the claim of the plaintiff, unless the land be so described in the pleadings that it may be known what land is the subject of controversy.

7. Article 10, Section 2, of the Constitution of 1869, declaring, "That all surveys of land heretofore made, and not returned to the General Land Office in accordance with the provisions of 'An act concerning surveys of land, approved the tenth of February, 1852,' are hereby declared null and void," applies to locations and surveys made prior to the adoption of the Constitution, and presents a rule of decision for courts in passing upon such locations.

8. It is not error to reject evidence offered to sustain a title which, from such evidence offered, is a nullity.

APPEAL from Guadalupe. The Frederick case was tried below before the Hon. J. J. Thornton.

The Schultze case was tried below before the Hon. Henry Maney.

The pleadings in the two cases are identical, except that the proceedings in Horton v. Brown were not pleaded in the Frederick case.

The statement is given from the record in the Schultze case, it being more perfect.

The suits were trespass to try title, filed on the twenty-second of March, 1853, by M. C. Hamilton, appellee, against Frederick in the first case, and against Schultze in the second, tenants in possession, to recover 1280 acres of land patented to plaintiff under a certificate in the name of Henry Foster.

On the seventeenth of October, 1853, A. C. Horton, as vendor or landlord of the defendants in each case, an-

swered and first plead a general denial, and alleged that·
on the first day of July, 1838, the board of land commis-
sioners of Matagorda county issued to him a certificate
for a league and labor of land ; that it was recommended
by the traveling board of land commissioners on the nine-
teenth of February, 1838 ; that he located one league of it
on league known as No. 1, on the San Antonio road, on
the east side of the Guadalupe river, and on the north
side of the San Antonio road ; which entry or location
was endorsed upon the back of said certificate, in the
words and figures following, to-wit :

"Located one league of land on the San Antonio road,
Guadalupe river, east side, on league one, this February
19, 1838.

(Signed)                                              "B. SIMS,
    "County Surveyor for the County of Bastrop."

That on the twenty-fourth of February, 1838, Sims, as
surveyor of Bastrop county, filed in his office a document
to the following effect, to-wit :

"Plat of a league of land surveyed for Albert C. Hor-
ton, situated on the west side of the Colorado river, on
the east margin of the Guadalupe river and San Antonio
road.   Reference to the General Land Office for the field
notes.   I certify that the above league of land was sur-
veyed according to law.

"Given under my hand, in the town of Bastrop, this
February the 24th, 1838.

(Signed)                                  "BARTLETT SIMS,
                                              "C. S. Bastrop.

"Twelve and one-half labors temporal and twelve and
one-half pasture land."

And further, that the field notes to which reference
was made by said surveyor, was a survey before that time
made and returned by Sims and Shackelford, on the
twentieth of January, 1835, and are as follows, to-wit :

"Plat and field notes of one league of land surveyed for Henry Brown, under the direction of T. Chambers, commissioner, and R. M. Williamson, agent, for B. Milam, Esq., situated on the east side of the Guadalupe, beginnning at a stake on the San Antonio road, from which a pecan fourteen inches in diameter bears north 75° west 18 varas; a hackberry 6 inches in diameter bears south 31° east 7 varas; thence north 45° east with the meanders of the San Antonio road 6666 varas to a post and southeast corner of league No. 1, where set a stone; thence south 45° west 4945 varas to a post and northeast corner of league No. 1, where set a stone; thence south 45° west to post and northeast corner of league No. 1, where set a stone; thence south 45° east 2400 varas to a stone and corner on the Rio Guadalupe; thence down the river with the meanders thereof to the place of beginning.

"Seven labors temporal, eighteen pasture land.

"Chain-bearers, E. Curtis and H. Reed.

"Surveyed by Sims and Shackelford, D. L. S.

"January 20, 1835."

That he thereby became entitled to the league of land; that the survey made by the said Sims, and reference made by Sims to the field notes made by Shackelford and Sims for Henry Brown, on file in the Land Office, constituted a valid survey, and entitled him to the patent for the land.

And he alleged that he had never vacated or abandoned said location, but he had used all due diligence to obtain a patent therefor; that he had been prevented from obtaining his patent by the fraudulent conduct of the plaintiff and others in locating certificates on said land, pretending that his location was in violation of law, and pretending that the same had more than the legal front on the Guadalupe river.

And alleged that at the time he made his location, one Burleson Gage had located a league of land immediately back of the Brown survey, so that he was prevented from so locating his league certificate, and getting the quantity of land that he was entitled to, if he had been compelled to take only half front on the river; that the plaintiff went before the Commissioner of the Land Office and represented that this defendant's claim had been adjudicated by the District Court of Travis county, and by the Supreme Court, and induced the Commissioner to issue patents to the land; that by reason of his prior appropriation of the land, and the false representations of plaintiff's counsel, the said patents to plaintiff were void, and conferred no title upon plaintiff.

On the fifth of May, 1854, the plaintiff filed an amended petition and replication to the defendant's answer, and plead in bar of the defendant's defense the judgment and decree rendered in the District Court of Travis county, wherein the defendant Horton was plaintiff, and James R. Pace and plaintiff M. C. Hamilton were defendants, which judgment was affirmed by this court at the fall term, 1852.

And the plaintiff further replied, that if the defendant ever had any such location, or any right under it, that at the date of filing plaintiff's petition the same was void, because more than twelve months had elapsed from and after the passage of the act approved February 10, 1852, entitled "An act concerning surveys of land," before the commencement of plaintiff's suit, without any survey of defendant's location, or any proceeding on the part of the defendant to compel a survey thereof, except the suit of defendant against the said J. R. Pace and plaintiff; and denied that any survey had ever been made except the survey made for Rowe, under whom he claimed.

And the plaintiff denied the validity of the alleged

survey made for Brown, and alleged if it was a valid survey for Brown, he denied the legal sufficiency of any such survey for the defendant Horton, or that any patent could legally issue to defendant by virtue thereof.

To the last described replication the defendant, Horton, filed a rejoinder, alleging that he was not estopped by the judgment of Horton v. Pace and Hamilton, plead in bar by plaintiff, because the same matters were not adjudicated, nor was it between the same parties; and further alleged that he was not bound by the statute of the tenth of February, 1852, requiring surveys and field notes to be returned within twelve months, because one year had not elapsed from the date of the affirmance by this court of the judgment in the case of Horton v. Pace and Hamilton before the institution of this suit.

The defendant further answered, that on the nineteenth of February, 1838, when he made his original location, the land was vacant; and if the reference to the General Land Office for the field notes by the surveyor was not a sufficient and valid survey of the land, that the location remains in full force; that he had been prevented from obtaining a valid survey, first, because the surveyor deemed it unnecessary; second, because the land appeared titled on the books of the Land Office to Henry Brown, and that he was under the necessity of bringing suit to have Brown's title canceled; third, because the surveyor of Travis county refused to make the survey on account of the location made under which plaintiff claims the land, and that he had never been able to obtain a survey of the land under his location, and get the field notes returned to the Land Office.

On the twelfth of May, 1870, the defendant filed his plea of the statute of limitation of three years.

On the sixth of December, 1870, the plaintiff filed an amended petition, which is in substance as follows:

That if the defendant, Horton, ever filed or located his headright certificate on the land described in this petition, that said file or location ought not and does not interpose any valid defense against the title of plaintiff; the said claim of Horton being invalid :

"1. Because the said file, entry or location of defendant, Horton, was abandoned and vacated by the withdrawal of said Horton certificate from the surveyor's office; that the said Horton's location and land certificate was withdrawn from the office of the district surveyor of Bastrop district or county, on or about the first day of July, A. D. 1838, and never was returned to said district surveyor's office, nor was it filed in any other surveyor's office nor in the the Land Office, prior to the twenty-eighth day of February, 1849, when it was filed in the office of the county surveyor of Travis county; that during said period from July 1, 1338, to February 28, 1849, there was no copy of any certificate, or any file, entry or location, record, document, or other evidence in the office of any district or county surveyor in the State of Texas showing the existence of said certificate, or that any file, entry or location of said certificate had ever been made of the said land described in the petition.

"2. The said land, upon which said file, entry or location is pretended to have been made, is situated upon the Guadalupe river, which river is, and was at the date of said alleged location, a navigable stream, of the average width of thirty feet, from its mouth up to or above the said land; that the said alleged location contained a front of more than one-half of the square thereof upon the said stream, there being at the date of the alleged file or location by Horton no other valid location or surveys preventing said location by Horton, extending back from the river Guadalupe so as to give only the legal front to said survey.

"3. The land claimed by Horton to have been located

by virtue of his said certificate was not surveyed within twelve months from the tenth day of February, 1852, as required by law, nor was the same surveyed within twelve months from the time the same was pretended to have been located by Horton, and so said location has become void and cannot be set up for any purpose as against plaintiff.

"4. If any survey was ever made by virtue of the said A. C. Horton's league certificate, for the defendant, then plaintiff shows that the field notes were not made out, recorded and returned, as prescribed by law, to the General Land Office on or before the thirty-first day of August, 1853 ; nor were said field notes returned to and filed in the General Land Office within twelve months from the date when the said land was surveyed, and so the said survey, and the field notes of the same, are now and have long been null and void, and that the said claim set up by Horton, and by his administrator subsequent to the death of said Horton, and by the defendants, are clouds upon the plaintiff's title.

" Plaintiff further shows that since the institution of this suit the land, by change of the county boundaries, is situated within the present limits of the county of Comal ; praying for judgment annulling the said pretended claim of defendant, and the so-called files and pretended surveys, and for general relief."

The defendant, Dennis, as executor of Horton, filed another amended answer, in which he alleged that in 1838, Horton located his certificate on the land in controversy, in the surveyor's office in Bastrop land district, where the land was then situated ; that since the surveyor filed said location and adopted the set of field notes made out for Henry Brown, upon application for a patent, the Commissioner refused to patent the land to said Horton, because it appeared to have been appropriated by Henry

Brown, thereupon he brought suit in the District Court of Bastrop county against Brown and the Commissioner of the Land Office to vacate Brown's title and to compel the Commissioner to issue the patent; that the District Court decided the cause against him; that he appealed from said judgment to the Supreme Court; that on the ninth of March, 1848, the cause was reversed and judgment rendered for him, and a *mandamus* ordered to issue to compel the Commissioner to issue the patent; that at the date of the last named decision Horton's certificate had been lost or mislaid; that he at once applied for and obtained a duplicate; that when he obtained the duplicate and found his original, the land, by subdivision of the Bastrop land district, became a part of the Travis land district; although it was not really necessary, he did apply to the surveyor of Travis district to survey the land, and that he refused, because the land had been located by Rowe, the party under whom plaintiff Hamilton now claims; that he then instituted suit against the surveyor of Travis for a *mandamus* to compel him to survey the land; that the suit was decided against him, because it was held that the land, as appropriated by him, did not appear to be in the shape required by law; but that such supposed defect in a survey would not vitiate a location valid in other respects.

He also filed with and made a part of his answer a copy from the records of Bastrop county in the case of Horton v. Brown, and copy of the record of the judgment of the Supreme Court in said cause, and alleged that Rowe's location upon the land was made during the pendency of the suit of Horton v. Brown, which was well known to Rowe when he located the land, and that Hamilton knew it when he purchased.

And further alleged, that by virtue of Horton's location and the judgment of the Supreme Court in case of Horton

v. Brown *et al.*, the land was dedicated to Horton and severed from the public domain; that the State had no right to the land when Rowe located it and when Hamilton got the patents; that at the time Horton made his location the land in the rear of it had been surveyed for a private individual, and was not vacant; that Horton's location was made as near the required shape as circumstances would admit.

He further alleged that he went into possession of the land in the early part of 1846; that he held open and notorious possession of the land at the time the locations were made under which plaintiff claims, and alleged that the Brown field notes were at the time of their adoption on file in the Land Office, where they have remained to the present time; that they were made by Sims, and he knew them to be correct.

On the eighth of December, 1870, the plaintiff filed a replication to the defendant's plea of the judgment in Horton v. Brown *et al.* in bar of plaintiff's right of action, and denied the validity of said judgment, because the judgment in the District Court of Bastrop county was in favor of the Commissioner of the Land Office, and had never been appealed from as against the Commissioner; that the judgment was stale, barred by lapse of time, and ten years limitation; and that the field notes alleged to have been adopted by defendants were never certified to by the surveyor Sims, to the president of the Board of Land Commissioners of Bastrop county, and afterwards certified to the Commissioner of the General Land Office for patent, as required by law; that no field notes were ever returned with the Horton certificate, approved and certified to as the law required; that the survey never had been made, or the field notes returned, as required by the act of the tenth of February, 1852, prescribing the time within which it should

be done, or as required· by the Constitution of the State.

On trial the plaintiff read the patent issued to himself, as assignee of Foster, for the land described in his petition.

The defendant offered in evidence, by depositions of J. J. Campbell, surveyor of Travis county, examined copies of the A. C. Horton certificate for league and labor, and the endorsement thereon, and of the other papers accompanying the same, as set out in the answer.

Also transcript of the proceedings in the *mandamus* case of Horton v. Pace and Hamilton.   (See 9 Texas, 81.)

This evidence was excluded upon objections made, by the plaintiff.

The defendant further offered a certified copy of the proceedings in the case of Horton v. Brown, from Bastrop county.   (See 2 Texas, 78.)   The record showed, in addition to the facts reported in 2 Texas, the following agreement:

"A. C. HORTON ⎫   We, the undersigned counsel of re-
    v.        ⎬ cord in this case, hereby agree and
HENRY BROWN. ⎭ consent that the appeal in this cause may be taken and prosecuted to the Supreme Court without the usual bond required in such cases by law, and that the pleadings of record in the case shall be sent up to the Supreme Court for adjudication and decision without any other statement of facts accompanying the record.

"W. P. HILL,
"Attorney for Appellant.
"J. W. BUNTON,
"Attorney for Defendant."

To this evidence plaintiff objected:

1. Because the appeal in the case had not been perfected as against the State.

2. Because the judgment is stale and barred by limitation.

3. Because the State was no party to the appeal; Borden having gained the case below, the judgment remains in force.

4. Because the judgment had not been recorded in the county where the land is situated.

These objections were sustained, and the testimony excluded.

The testimony of Bartlett Sims, the surveyor of Bastrop county in 1838, and who had made the survey for Henry Brown, sufficiently appears in the opinion.

J. R. Pace testified that he was surveyor of Travis land district in 1848, and made the survey of the Foster certificate for Dr. Rowe, in July, 1848; that at the time Rowe made the file in the surveyor's office of the Foster certificate, there was nothing in the office showing Horton's claim to the land; that when he made the survey there were many German settlers upon the land; that he told Dr. Rowe of the settlers a month or two after making the survey.

The testimony of both Sims and Pace was voluminous. Other evidence was introduced, but which sufficiently appears in the opinion of the court.

Judgment was rendered in each case for the plaintiff, canceling Horton's claim and awarding possession of the land to Hamilton.

From the judgment the defendants appealed.

The errors assigned are:

1. The exclusion of the testimony of the witness Campbell, including the evidence of the Horton certificate, the endorsement thereon, and of other transactions had concerning said location, as set out in the pleadings.

2. The exclusion of the record in Horton v. Pace and Hamilton.

3. Exclusion of the record in Horton v. Brown.

4. That the judgment was rendered for the plaintiff.

*John Ireland,* for appellant.—This suit was brought by Hamilton to recover the land described. The defendant claimed under A. C. Horton. Hamilton introduced in evidence a patent from the State, and closed his case. Dennis, the executor of Horton, set up title by location and survey.

In 1834 this land was in Bastrop land district, and in Milam's colony, and was surveyed by Bart. Sims for one Henry Brown, as a colonist. It was ascertained that Brown was not entitled to the land, and Horton located his headright certificate upon it. The Commissioner refused to patent for Horton, because it appeared to belong to Brown. Horton brought his suit against Brown and the Commissioner to vacate the Brown title and to force the Commissioner to issue the patent to him, Horton. Horton succeeded in both. (See Brown v. Horton, 2 Texas, 78.)

This suit was finally decided by the Supreme Court in 1848. In the meantime Horton had lost his certificate. He at once set about getting a duplicate, and by the time he succeeded, and in fact before the land had been thrown into Travis land district, Hamilton—or Rowe, under whom Hamilton claims—located the land in Travis district. So soon as Horton got his duplicate, and again when his original turned up, he applied to the Travis surveyor to survey the land—a work entirely unnecessary. The Travis surveyor refused to survey the land for Horton. (Horton v. Pace, 9 Texas, 81.)

Horton took possession in 1846, and remained uninterrupted till this suit was brought in 1853, say seven years. (20 Texas, 611, Horton v. Hamilton.)

A patent is a ministerial act only, and if done contrary to law it is a nullity. (Polk v. Wendell, 5 Wheat., 433; Mayor & Co. v. U. S., 10 Pet., 622; Gun v. Watkins, 7 Wheat., 27.)

Bunton had authority to take the case up by appeal. (Russell v. Randolph, 11 Texas, 461; Lindsey v. Hawes, 2 Black, 554; Lord v. Chadoin, 42 Maine; 5 Cal. R., 81; 27 Ark., 203; 9 Cranch, 99; 18 How., 87; Mr. Bower's brief in 25 Texas (Sup.), 419; Stoddard v. Chambers, 2 How., 284; Lewis v. Mixon, 11 Texas, 564; Lindsey v. Hawes, 2 Black, 554.)

Was it competent for the surveyor to adopt an old set of field notes, instead of making a new survey?

This right was not called in question in the case of Horton v. Brown, 2 Texas, nor was the right doubted by the Commissioner of the General Land Office. It was so decided in Horton v. Pace, 9 Texas,—; McGee v. Chadoin, 30 Texas, 644; Ruis v. Chambers, 15 Texas, 590; expressly held in Styles v. Gray, 10 Texas, 507.

The survey having been made before the closing of the Land Office, there was no necessity for a resurvey, under the act of 1852. (Jennings v. De Cordova, 20 Texas, 513.)

This proposition being answered in the affirmative, the case does not come within the act of 1852, nor the provisions of the late Constitution, for the reason that the field notes were already returned.

There has been all the time a location and survey on the land by virtue of a valid land certificate. There is no innocent purchaser for a valuable consideration.

Hamilton bought an equity from Rowe, and is entitled to no greater rights than Rowe had. (Spotford v. Manning, 6 Paige 383; Brown v. Anderson, 1 Monroe, 201; Pinson v. Ivry, 1 Yerger, 296; Governor v. Lynch, 2 Paige, 300.)

Notice to Pace, the surveyor, was notice to Rowe. (Corbin v. Mulligan, 1 Bush, 279.)

Horton's possession was notice to Hamilton and Rowe. (Hawley v. Bullock, 29 Texas, 216.)

A location by a valid certificate gives property, and is

within the constitutional protection. (Sherwood v. Flem-ing, 25 Texas Sup., 409.)

There has been no one misled in this matter. Horton's possession was notice.

The effort to have the land surveyed by Pace was sim-ply precautionary, and a wish that the Travis land dis-trict should show the facts. (Morris v. Brinlee, 14 Texas, 288.) Horton was not compelled to have his land sur-veyed in Travis land district. (Howard v. Colquhoun, 28 Texas, 134.)

Such legal titles have never been permitted to overreach subsisting equities. (McGee v. Chadoin, 30 Texas, 644; Hollingsworth v. Holshousen, 25 Texas, 625; Morris v. Byers, 14 Texas, 279; Morris v. Brinlee, 14 Texas, 285; Milam County v. Robertson, 33 Texas, 366.)

The judgment and record in the case of Horton v. Brown and the Commissioner of the General Land Office should have been admitted in evidence. That judgment completely severed the land from the public domain if it had not been done by the location; and as Hamilton held under the government, he too was bound by that judg-ment. (Kindle v. Stokes, 3 How., 100; Loftus v. Mitchell, 3 A. K. Marsh., 1366; Bush v. Hampton, 4 Dana, 83; Reardon v Searey's Heirs, 1 Litt., 17, 53; Monogham v. Wilborn, Dallam, 626. See case of Horton v. Brown, re-ferred to in 22 Texas, 155.)

The three years adverse possession gave title under the fifteenth section of the act of limitation. (Pas. Dig., Art. 4622; Christie v. Alford, 17 How., 600; DeLeon v. White, 9 Texas, 609; Wash. C. C., 350; Chiles v. Jones, 4 Dana, 483; Breeding v. Taylor, 13 B. Monroe, 482.)

It may be urged, as was done below, that the State can-not be bound by the three years limitation, and this po-sition is not denied. But I say that this suit was not brought by the State. The issuance of the patent is the

mere work of a clerk. A location and survey will support a suit for land. Hence, as against the State, it was Hamilton's land from the date of his location and survey, and limitation began to run from the date of his survey in 1848. (Kimbro v. Hamilton, 28 Texas, 560, and case cited; 3 Serg. & Rawle, 290.)

The issuance of the patent to Hamilton was not an assertion of title on the part of the State. (Butler v. Coy, 9 Ben. Monroe, 315.)

*Chandler & Carleton* and *Terrell & Walker*, for appellee, both filed briefs.

*A. J. Hamilton*, for appellee, made an oral argument.

OGDEN, J.—These two cases are actions commenced in the District Court by the appellee against different parties for alleged trespasses on different portions of a certain league of land; to both of which suits A. C. Horton, as the vendor or landlord of each, made himself a party defendant, and set up a claim in himself to the entire league, and thereafter Horton is recognized as the defendant in both causes. The prosecution and defense are the same in both, and the pleadings and evidence are so nearly identical that the decision of one must settle the other. We have therefore deemed it proper to consider both cases together.

There is, however, an assigned error in cause 215, which may be disposed of before considering the merits of either. It appears, from the exceptions taken, that on the trial of that case the jury found a verdict for the plaintiff, and at the suggestion of counsel, they were instructed by the court to amend their verdict by adding "the land described in plaintiff's petition." This was an action for a specifically described tract of land, and the jury by their verdict evidently intended to give the plaintiff that land,

and their omission to say so may be considered as a clerical omission, and as such it was very properly corrected under the direction of the court. (McKeen v. Paschal, 15 Texas, 37.) We can see no valid objection to a similar amendment in the presiding judge's charge to the jury, provided the same is done in the presence of the jury and without any imputation of an improper motive.

The law has prescribed no precise form for making locations of the public lands of the State, and he who held a genuine certificate or other valid claim for a portion of the public domain might locate or file the same, at his pleasure, on any lands unappropriated, and which are not reserved from location. But in order to separate any specific tract of land from the balance of the public domain, there must be a location "sufficiently specific to identify the land which it is intended to appropriate" (Hollingsworth v. Holshousen, 17 Texas, 44), and must be made in such a manner as to notify the public of the appropriation.

In 1856 an act was passed prescribing, to some extent, the manner of making and the necessary requisites in order to constitute a valid and legal location. Previous to that time the whole matter was in a great measure controlled by instructions issued by the Commissioner of the General Land Office.

In 1838 instructions to the different surveyors of the State were issued, directing how and by whom surveys should be made, and the manner of making locations, and how the evidence of locations should be preserved and made public. These instructions were similar to the act subsequently passed by the Legislature, and were equally binding upon the surveyors and persons for whom surveys were made.

The location of the league now in controversy was made by A. C. Horton in 1838; and though the surveyor failed

22

to make a record entry in a book kept for that purpose, as required by the instructions from the General Land Office, yet he endorsed on the certificate the location and a reference to the land located. We are of the opinion that the endorsement then made, if sufficiently specific to point out the land located, was an appropriation of the land to the owner of the certificate, provided the same was previously a part of the public domain. But as that endorsement upon the Horton certificate was the only record evidence of the appropriation, and as the locator was required to file his certificate in the surveyor's office as a further evidence of the location, it would necessarily follow that when that certificate was withdrawn from the office there remained no evidence of the appropriation, or that the holder of the certificate still claimed the land ; and a stranger would have the right to suppose that there had never been a location, or if one had been made, then that the same had been withdrawn or abandoned.

Horton located his certificate in 1838, but within a few weeks of the location withdrew his certificate, and all evidence of the location, from the surveyor's office, and kept the same out for over ten years, and until the land had been re-located by another party, and for this reason it might properly have been presumed that the file by Horton had been abandoned. (Willie v. Wynne, 26 Texas, 44 ; Booth v. Upshur, 26 Texas, 73.) It is, however, claimed for appellants that Horton, in 1846, and before any other location was made, took possession of the land by his tenants, and was holding the same at the time of the Rowe location, and continued so to hold the same until the institution of this suit, and that this fact was sufficient to give notice to all persons that Horton claimed the land, and also that this notice would supply any defects there might be in the records of the surveyor's office.

But it must be borne in mind that the possession of one person in itself is no evidence of the right or claim of another; and there is no evidence to bring home to Rowe or his surveyor the knowledge that the settlers upon the land, at the time of Rowe's location, were the tenants or vendee's of Horton; nor that Horton claimed the possession through these settlers, as there was no record evidence in the proper office that Horton claimed the land. Besides, it was a notorious fact that the land had once been surveyed and patented to one Henry Brown; and it would have been quite natural to suppose that the settlers on the land at the time of the Rowe location were tenants or vendees of Brown. But the Brown title, at the time of the Rowe location, had just been declared by the Supreme Court to be null and void.

It is true that the suit against Brown had been instituted and prosecuted by Horton; and had he left in the surveyor's office any evidence that he intended to claim the land included within the Brown survey, he might then have protected his location. But the fact that he was prosecuting a suit in the District and Supreme Courts to have Brown's patent canceled, could hardly be considered as evidence of his location; nor that he had not abandoned his location, since he had withdrawn his certificate and all evidence of a location from the surveyor's office, and kept them out for many years.

If it were admitted, that after a complete and specific location, the pendency of a suit in the District and Supreme Courts, wherein the locator claimed the right to appropriate the land so located, would be a sufficient notice to the public of that claim, yet it might be gravely questioned whether Horton had so perfected his location as to entitle him to the benefits of that notice. His location consisted entirely in an endorsement upon his certificate by the surveyor, "Located one league of land on

the San Antonio road, Guadalupe river, east side, on league one, this February 19, 1838 ;" and the suit in the Bastrop District Court was instituted for this identical league of land ; yet in neither of the suits now at bar does he or his representatives claim league number one as deeded or patented to Henry Brown, as the plot and field notes of the Brown league, and the one now claimed by appellants, most clearly show. This fact might be considered as additional proof that Horton, at the time he withdrew his certificate from the surveyor's office, abandoned the location he had made on the nineteenth of February, 1838, and that the present claim was wholly the result of an after-consideration ; and therefore the suit pending against Brown could hardly be considered as notice of the present claim.

Again, if we consider the endorsement made on the certificate the only location made by Horton, then we must also come to the conclusion that he failed to perfect his location by having his field notes properly certified to the General Land Office, as applied to his location, and by having them returned to the president of the Board of Land Commissioners, as required by the act of December, 1837. Indeed, we think the pleadings and evidence in both causes show most conclusively that Horton, after the endorsement on the certificate, when the same was filed with the surveyor, changed his mind as to the form of his location and the field notes to control the same ; as the plat and field notes which were, soon after the filing of the certificate, sent up to the General Land Office are quite different from the plat and field notes of the Brown survey.

It was the Brown survey and the Brown field notes alone which Horton had a right to claim by virtue of the endorsement on and filing of his certificate, and when he changed his field notes, and the form of the land he wished to appropriate, then he could no longer legally

claim any benefit or right under that prior survey, nor the endorsement on the certificate, as that endorsement appropriated league number one, and nothing more. He would be required to make a new file or location, to have the land surveyed and certified under oath by the surveyor, in the same manner and form as required for the location of any other portion of the public domain. If this be a correct view of the legal rights of the parties, then appellants can have no claim to the land in controversy which the courts can recognize, as no location was made by Horton, excepting on the Brown league, and now appellants claim a different tract of land, or rather a tract bounded by different field notes which were never made by actual survey.

That Horton could have adopted the location, survey and field notes of the Brown league, repeated decisions of this court have settled beyond controversy. But we think it also well settled that when a locator adopts an old location and field notes, they must be applied to the new location by the surveyor, and certified to the General Land Office in the same manner as a new survey.

Sims, who was the surveyor for the Bastrop land district, and who made the location for Horton, testifies that he made no actual survey for Horton, and yet his plat and field notes sent up to the Land Office show an entirely different survey from that made for Brown. It would appear that Horton fully appreciated the necessity of having an actual survey made, as he brought suit against Pace, the district surveyor, to compel him to survey the land as designated by the plat made by Sims. In that case the court refused the compulsory process against the surveyor, because of the illegal form of the survey required; and there appears to have been no further efforts on the part of Horton to perfect his title or to appropriate the land until the bringing of this suit.

We think it clear that Horton, in order to appropriate the land as claimed, or to perfect his location into a title, should have had his land surveyed and the field notes returned to the General Land Office, as required for other locations, and his neglect or failure to do so has caused him to lose any right he may have acquired under his location.

Nor can the suit against Pace, or its termination, be pleaded as an excuse for not having the land surveyed and the field notes returned to the General Land Office, for he should have known that the form of his location was objectionable under the statute, and that the courts would not lend their assistance in the violation of the law. (Horton v. Pace, 9 Texas, 81.)

The act of the tenth of February, 1852, provided that "All lands heretofore located by virtue of any genuine claim to land shall be surveyed within twelve months from the passage of this act, or the location shall become null and void, and the lands subject to re-location and survey, as other vacant and unappropriated land." The same act provides that the field notes of all surveys shall be returned to the General Land Office within the same time. We are of the opinion that the location of apellant comes strictly within the object and purview of the act cited, and that Horton was bound by that act to have his survey and field notes returned to the General Land Office within the time prescribed, or lose the benefit of his location. He has failed to make any return as required, and the appellee, or his vendor, having made the location on the same land, and having complied with the statute, has received a patent for the land, and we are unable to discover any legal grounds for depriving him of the fruits of his industry and diligence. (Upshur v. Pace, 15 Texas, 531; Patrick v. Nance, 26 Texas, 297; Crow v. Reed, 25 Texas Sup., 392.)

We are also of the opinion that the claim of title, by three years' possession, cannot avail the appellant, since, if he has no title, his possession for three or five years could hardly avail him. And besides he has proven possession of but a small and distinct portion of the league, and that portion may, or may not, be on that portion appropriated by the patent of appellee. For the reasons herein given, and for the further reason that the judgment in the case of Horton v. Brown *et al.*, from Bastrop county, had never been recorded in the county where the land is situated, we think the court did not err in sustaining the objection to the introduction in evidence of the record in that case. That case was taken to the Supreme Court with irregularity at least, and the fact that no efforts were made to enforce the same against the Commissioner of the General Land Office shows pretty conclusively that no confidence was placed in the validity of that judgment against the Commissioner.

From the view of the law of these cases, as here taken, it is clear that Horton, at the time of the location by Rowe, had no valid location upon the land in controversy, which would authorize him to contest the location and patent of Rowe and his assignee.

It is further clear that if, at the time of the location by Rowe, Horton's location was good and subsisting, yet his failure to have his land surveyed, and the field notes returned to the General Land Office, as provided by the act of February, 1852, has caused him to lose any right he may have acquired under his original location.

We think it also clear that the claim of appellants, as set up in these cases, is in direct conflict with the positive declarations of Article 10, Section 2, of our present Constitution, which declares, "that all surveys of land heretofore made and not returned to the General Land Office, in accordance with the act of 1852, shall be null and void."

The location, as now claimed by the appellants, was never surveyed, nor were the field notes ever returned to the Land Office as required by law, and the same must now be considered null and void; and therefore the rulings of the District Court, on the introduction in evidence of the record, in the case of Horton v. Pace and Hamilton, or the documents referred to in Campbell's depositions, become wholly immaterial, as they in no way could affect the invalidity of that location.

And the judgments in both cases are therefore affirmed.

AFFIRMED.