ELIZA KEMPER, Administratrix of JOHN F. KEMPER, Deceased, vs. THE CORPORATION OF VICTORIA — Appeal from Jackson County.

Imperfect or inchoate titles are under the control of the political authority of the country, and the government may impose such conditions and restrictions upon them as the legislative department may deem fit and proper.

If an incipient claim, possessing strong equity, be made by the political authority to yield to one of less merit, the only remedy of the losing party would be an application to the liberality of the government for compensation.

A certificate that has not been recommended for patent by the board of commissioners appointed under the act of 1840, "to detect fraudulent land certificates," etc., gives to the party holding it no right which could be sustained in a court.

In making out the statement of facts in a cause, the unnecessary verbiage of witnesses, or their statements which conduce to prove nothing in the case, should be omitted.

Members of public corporations are competent witnesses in suits in which the corporation is a party and interested; but members of private corporations cannot be admitted as witnesses in suits in which the corporation is interested.

The record in this case presents a large mass of documentary and other evidence, and sundry bills of exception to various rulings of the court at the trial below; but as all the facts essential to an understanding of the questions decided in this court are stated in the opinion, it is deemed unnecessary to give a more detailed statement of them here.

J. W. ROBINSON, for appellant, contended that the corpora-

tion of Victoria showed no sufficient or valid title to the four leagues of land previous to the legislative grant and patent in 1841; and as Kemper's certificates were located in 1839, he had a prior right to so much of the land as his certificates covered.

2d. That if the corporation acquired any right previous to the revolution, under the laws of Coahuila and Texas, it was subsequent to the grant made by Governor Viesca to Carlisle, of two leagues of the land, on the 15th of August, 1828.

3d. That the grant to Carlisle was complete in all respects except the survey, which was not made, in consequence of the neglect of the government and the *force and fraud* of its officers. That he took possession of the land, placed his stock upon it, and continued to occupy it until he was imprisoned, ironed, and forcibly driven off by DeLeon, the commissioner. That the government was responsible for this act of its officer; and Carlisle, being prevented by it from procuring the survey to be made, is excused. The government could not take advantage of its own wrong so as to affect his title. [2 Arkansas (English) R. 131; 21 Pick. 430, 441; 6 Peters, 691, 714; 10 Smedes & Marsh. 460.]

4th. That the survey was not essential to the validity of the grant. The grant itself designated the spot and gave identity to the land claimed; and the occupancy under the grant consummated it. [10 Smedes & Marsh. 461; 7 id. 66; 4 id. 46; 2 Howard (U. S.) Rep. 317, 344; 5 Wheat. 293; 13 Peters, 449; 4 Howard (Miss.) R. 522, 555.]

5th. That the court erred in permitting Kerr, a member of the incorporation, and who was shown to have a direct interest, to testify for the plaintiff. [1 Greenl. Ev. 374, 552; 2 Starkie Ev. 776; Kin. Comp. for 1847, p. 61.]

6th. That, if Kerr was competent as a witness, it was not the best testimony. The commissioner, DeLeon, should have been called. His testimony would have been of higher grade. [4 Peters, 364; 9 Dana, 82, 267; 9 Missouri Rep. 704.]

A. S. CUNNINGHAM for appellees.

The title to the corporation of Victoria for the four leagues of land was perfect. The town was founded in 1825 under the

colonization law of that year, and by that law, and the commissioners' instructions of 1827, the right to the land was acquired. The grant of the four leagues was made by the commissioner, De Leon, in 1834, and was subsequently confirmed by the congress of Texas, and patented in 1841.

The locations of Kemper afford no evidence of title, because it is not shown that his certificates were genuine, under the act of 1840, to detect fraudulent land certificates, etc.

Carlisle's claim is inchoate, imperfect, and can have no standing in court. [15 Peters, 317; 16 id. 196, 157; 2 Howard U. S. R. 375; 3 id. 56; 4 id. 432, 449; 5 id. 25; Trimble vs. Smithers, 1 Texas R. 790; Jones vs. Menard, id. 771.]

Opinion of the court delivered by Mr. Justice Lipscomb.

This suit was brought by the mayor and aldermen of Victoria for a trespass, alleged to have been committed by the defendant's intestate on the lands belonging to the corporation, as claimed by the plaintiffs.

There was no doubt but the *locus in quo* of the alleged trespass was on the land so claimed, and, if it belonged to the corporation, the trespass was sufficiently proven.

The plaintiff deraigned title from the Mexican colonization laws, of four leagues laid out for the colonial town of Guadalupe de Victoria, in the colony of the late empresario, Martin De Leon. The several links of title offered in evidence would present a somewhat tedious, and, as we believe, a profitless inquiry; as it concludes with the act of congress of Texas of December, 1841, confirming the right of the corporation to the four leagues dedicated to the town, and the patent of the republic issued to them soon after, and in pursuance of the act of congress, confirming their title, and requiring the issuance of the patent.

The defense set up was the locations of the headright certificates of Jonathan Scott for one-third of a league, and the headright of the appellant's intestate for two-thirds of a league, both located in April, 1839, but not surveyed; and secondly, an outstanding superior title in one Carlisle.

If it were competent for the republic to convey title, it cannot be doubted that it was conveyed to the corporation in as

absolute property, by the acts above stated, as the government could grant, and nothing could destroy their title unless the fee had passed out of the sovereignty before its action, in behalf of the corporation. . We must then examine into the title set up in defense.

If the certificates had of themselves been equal, in rank of title, to the legislative grant and patent, being prior in point of time, they would have claimed a superiority. But according to a series of decisions of this court, the effect of the certificates, as a matter either of title to sustain an action or of defense, would be a nullity. In the first place, we have ruled that, in all imperfect or inchoate titles, the government or political authority has the control, and may impose such restrictions and conditions to its bounty as the legislative department may think fit and proper, and if it is admitted that the incipient claim is surrounded with circumstances of more equity. Yet, if the sovereign or political power should give a preference to one less meritorious, the only relief or remedy left to the unsuccessful party would be an application to the liberality of the government for compensation.

In the second place, the certificates could give no right that could sustain a standing in court, in any case, unless they had been recommended as genuine by the traveling board of commissioners, and we have no evidence that they were approved as genuine. If they had been the party offering them in evidence, they ought to have shown the fact, or must show that such proof was expressly waived by the opposite party. [See Hosner vs. De Young, Tex. R. vol. 1, p. 764; Jones vs. Menard, id. 771; Trimble et al. vs. Smithers, id. 790; The Board of Land Commissioners vs. Riley, and Walling vs. Republic.] The certificates and localities therefore presented no defense in law to the plaintiff's title.

We will next inquire if there is anything in the outstanding superior title in Carlisle.

The evidence of the title of Carlisle is a translated copy, under the seal of the commissioners of the general land office, of Carlisle's solicitation to Viesca for two leagues of land on the Guadaloupe, the recommendation of the ayuntamiento of

Bahia in favor of his petition, the order of Viesca that he shall have the land designated, if vacant, and an order that the commissioner, whom the government may appoint, will put him in possession of the said two leagues, and issue the corresponding title, 24th October, 1828. His title was never consummated by being surveyed, and the grant contemplated in the order was never extended. A reference to the authorities cited above will show very conclusively that this title had not been embraced by the provisions of the constitution of the republic, nor the acts of congress providing the mode of perfecting imperfect titles to colonists. He could not have had his claim recognized by any board of land commissioners organized under our land system, and consequently his right is not such as can be asserted in any of our judicial tribunals. At all events, if it were such an one as could have been perfected by a board of land commissioners, having never received that sanction, it could not be used as evidence of title. [Jones *vs.* Menard, *ante.*]

There was a great deal of evidence showing why he had not had his claim perfected, such as being prevented by the chief of the military department, and other Mexican authorities, all of which should have been addressed to the political authority of the state, the only power capable of affording him any relief.

We are fully satisfied, that, to put his claim on the most favorable footing, that is to say, to admit that everything was strictly in conformity to law, as far as he progressed with his title, still it was left imperfect, and therefore not entitled to any judicial cognizance. This view of the point under consideration renders it useless to prosecute the inquiry as to the legality of his incipient steps which was strongly questioned.

The record of the trial in the district court has been most unnecessarily incumbered. There seems to have been but little regard to the rules prescribed by this court in making out the transcript. It must be admitted, though, that it would have been quite voluminous had the clerk omitted everything required by the rule to be omitted. From the course of practice by which it has been characterized, seldom has a case having

really and intrinsically so little in it, been so much incumbered by the various and repeated amendments through a lapse of four or five years from the time when the first answer was filed. The practice of ordering up everything in the history of the progress of the cause, under the name of a statement of facts, cannot be too strongly disapproved. It imposes a great deal of useless labor and consumption of time, both on the bar and bench. It should be recollected that everything said by an erratic, prosaic witness is not proof, and what is not, should be excluded. In looking through the crude mass of matter contained in this record, we see that a great many points were reserved that need not take up our time in investigating, because, were the court below right or wrong in receiving or rejecting such evidence, it would not afford any just ground in law for reversing the judgment. There was one question on the admissibility of evidence we will notice, because, though not so material in this particular case, is thought never to have been decided in this court. It is the competency of Kerr, the surveyor, to give evidence, he being one of the corporators owning lots and living in the town. On this question there will be found to be some contradiction in the decisions of the courts in England, and also in the United States. When the question to be decided involves an increase or diminution of the corporate means or funds, so as to add to, or lighten, the burthen of taxation upon the individuals, the English courts have holden that his mere liability to be rated constitutes an interest too remote and contingent to operate as a ground of exclusion, though it is said to be otherwise if he be actually rated. [Rex vs. Prossee, 4 Term. R. 17, 19, 20; Rex. vs. South Lynn, 5 id. 664, 667; Rex vs. Little Lumley, 6 id. 157.] In the state of New York, there seems to be some conflict. In the following cases the distinction in the English courts of rated and ratable, is supposed to be sustained: Falls vs. Belknap, 1 Johnson, 486, 491; 11 id. 76. But in Bloodgood vs. Jamaica [12 id. 285], the distinction seems to have been disregarded, and the witness, though actually rated for the support of the poor, was admitted. In South Carolina, in the case of the City of Charleston vs.

King, [4 McCord,] 487, a case for a penalty due to the corporation, the competency of the witness was admitted, and this on common law principles. In Connecticut, the general rule has been adopted, that in all cases where the corporations which are of a public nature, and comprehend the divisions of the state, such as counties, towns, societies and school districts, are parties on record or interested in the suit, the members of the corporations are competent witnesses, for they are not considered as having a personal but a corporate interest, which ought to go to the credit and not to the competency; and there are instances where, if they were excluded, no testimony could be obtained. [Swift's Evidence, 57; Smith *vs.* Barber, 1 Root, 207; Skelton *vs.* Tomlinson, 2 Root, 132.] In New Jersey, it has been held that the inhabitants of a town are good witnesses in a suit in which the town is interested, and virtually a party. [1 Cox R. 189; 1 South, 186.]

Whatever the conflict of decisions may heretofore have been, we believe that the distinction has settled down into private and public corporations. That members of the former would be incompetent witnesses, whilst members of the latter would be admissible. The reasons given for the distinction seem to be satisfactory and conclusive in the ruling of the courts of Connecticut. We believe, therefore, that the objection to the admissibility of the witness Kerr was correctly overruled. The judgment is affirmed.