## U. A. Pope v. Harry Anthony et al.

### Decided April 12, 1902.

**1.—Land Certificate—Unrecommended Headright.**

A headright land certificate not recommended by the traveling board of land commissioners nor established as genuine and valid by decree of the district court, was void, and a survey under it conferred no rights.

**2.—Same—Evidence of Recommendation.**

Evidence held to show that a headright certificate was duly examined and recommended by the board, although the number and date as given in the board's report did not correspond with its true number and date.

**3.—Same—Evidence—Defacement.**

A headright certificate was not inadmissible in evidence because some of the words in it had become obliterated, where it was offered in connection with the testimony of witnesses who had examined it before it was defaced, nor could the opposite party object to its admission because of such defacement where he afterwards offered it in evidence himself.

**4.—Public Domain—Pre-emption Rights—Repeal.**

A filing and settlement on public land under the pre-emption law of February 1, 1861, with occupancy of the land for more than five years thereafter, conferred no vested right in the land where the proof of occupancy was not filed in the General Land Office until long after the pre-emption law had been repealed by the Act of 1889, and the 50 cents per acre due the State was never paid.

**5.—Evidence—Deposition—Exhibits Attached.**

A witness testifying by deposition was asked to attach certain instruments as exhibits to his answers, and he replied that they had been already attached to his answers to a deposition in another case, "and are hereto again referred to, affirmed, and made part of my foregoing answer in this case." Held, that the exhibits were properly received in evidence, although the first deposition was taken in a suit between other parties pending in the same court.

**6.—Same—Conclusion.**

Where a witness was asked whether there were any files missing from the General Land Office in regard to a certain certificate, and he answered that "it appeared" that the original file with its contents was abstracted from the office many years ago, objection that the witness was not stating a fact, but the appearance of a fact, was not tenable where his other answers stated all the facts, so far as the record of the Land Office showed, about the loss of the certificate and its subsequent return.

**7.—Same—Expert Evidence—Handwriting—Letters.**

A witness who qualified as an expert in handwriting and showed himself familiar with the records of the Land Office, and especially with a certain land certificate, were properly permitted to testify that a transfer of the certificate to an assignee, written on its back, was in the same handwriting as letters received at the Land Office purporting to come from such assignee.

**8.—Same.**

It was permissible for a witness to testify that the report of the traveling board of land commissioners on file in the General Land Office showed that land certificates had been issued to certain persons, and that the numbers of the certificates as stated in the report were not their real numbers, where the report was read in evidence, as this did not contradict the report, but was explanatory of it.

**9.—Land Certificate—Recommendation.**

Where the evidence showed that the headright certificate in controversy had been duly recommended by the traveling board, but that its number was wrongly stated in the board's report, the court correctly refused to charge upon the theory that the certificate had not been recommended.

Appeal from Franklin. Tried below before Hon. J. M. Talbot.

*Crosby & Dinsmore, King & King,* and *R. E. Davenport,* for appellants.

*Walton & Walton* and *Hiram Glass,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—Appellees brought this suit in the District Court of Franklin County on October 21, 1893, in the ordinary form of tresspass to try title for the recovery of about 600 acres of land lying in Franklin County. The defendant's answer on which the case was tried consisted only of a plea of not guilty and a plea of improvements in good faith. There were at one time certain interveners in the suit, but their pleas were dismissed, and there is now no issue as to said interveners. The cause was tried in the District Court of Franklin county before Hon. James M. Talbot, district judge, with a jury, at the May term, 1901, of the court.

Plaintiffs sue as the heirs of one Willis Roberts, and claim the land by reason of its location under a headright land certificate of the second class issued to Thomas Casey on the 8th day of June, 1838, and numbered 501, and transferred by indorsement on the back thereof to Willis Roberts. The land certificate above referred to was located on said land by J. M. Taliaferro, appellant's vendor, who claimed said certificate by a chain of transfers as follows: From Thomas Casey to John O. Buquor; from John O. Buquor to D. W. Heard; from D. W. Heard to J. M. Taliaferro. Appellees attack the said transfer from Thomas Casey to John O. Buquor as a forgery.

Defendant relied, first, on possession; second, under the chain of title from Thomas Casey through John O. Buquor to appellant, above mentioned; third, on a judgment of the District Court of Hopkins County for said land in favor of J. M. Taliaferro and a general warranty deed from J. M. Talliaferro to appellant; fourth, as to 480 acres of said land, upon three pre-emptions in favor of E. L. Ward, M. E. Pope and John Chapman, and a chain of transfers from said pre-emptors to appellant.

There was verdict of the jury for appellees for the recovery of the land and for appellant for his improvements. Appellant in due time filed his motion and amended motion for new trial, which were overruled by the court. Appellant excepted at the time, gave notice of appeal, filed his appeal bond, and has brought the case here for review by this court.

1. Appellant contends that a headright land certificate which has not been examined, passed on, and recommended by the traveling board of land commissioners, or which has not been established as genuine and valid by a judgment or decree of the district court of the State, is null and void and will not authorize a survey thereunder, and the owner of such certificate acquires no right in land surveyed by virtue thereof. This contention is sound and supported by authority. 6 Texas, 289;

3 Texas, 87; 3 Texas, 135; 66 Texas, 341; 23 Texas, 43; 5 Texas, 441. It would seem that a headright land certificate admitted to be genuine will not give right to land unless it has been recommended by the traveling board of land commissioners or established by a judgment or decree of the district court. Miller v. Brownson, 50 Texas, 591. It is insisted by appellees that the certificate in question was passed upon by the traveling board of land commissioners and recommended as genuine. The appellees introduced in evidence a report from the General Land Office made by the traveling board of land commissioners, dated June 23, 1841, showing a list of certificates passed upon by said board and recommended as genuine, in which appears a certificate for one-third league issued to Thomas Casey by Harris county, June 6, 1838, and numbered 587. This report recites that: "We also find that the numbers of the original records did not correspond with the numbers on the certificates, and in order to facilitate the investigation we have numbered the foregoing claims according to the applications, there being no numbers attached to the applications found on the record, or to any portion of the claims." The number of the certificate in question is 501. There was evidence that the numbers given in said report to other certificates therein passed upon did not correspond with the true number of said certificates; for instance, certificate for one-third league issued to Geo. W. Lindsey, March 24, 1838, is numbered in said report 499, while the correct number of the original certificate is 235. The same discrepancy is shown between the numbers given in said report to other certificates and the correct number of such certificates. The records of the General Land Office show that there was issued by the board of land commissioners of Harrisburg County to Thomas Casey one-third league headright second class certificate, dated June 8, 1838, number 501. The evidence further shows that he only received one headright certificate, and that this certificate is located in Franklin county in four surveys, three of which have been patented to Thomas Casey. The evidence shows that the territory now composing Franklin County was, in 1860, part of Titus County, and that Franklin County was taken from Titus County in 1875. We are of the opinion that the evidence clearly shows that the number given in the report of the traveling board of land commissioners was the number of the application made to the State board for its consideration as to the genuineness of the Thomas Casey certificate, and does not purport to be the number of the original certificate, and that the date June 6, 1838, given in said report of said certificate, is a mistake, it being shown that but one headright certificate did issue to Thomas Casey and that the same issued on June 8, 1838. We conclude the evidence shows that said certificate was passed upon and approved as genuine and valid by the traveling board of land commissioners June 23, 1841.

2. It is contended that the land certificate offered in evidence was so mutilated and defaced that it could not be read, and was therefore inadmissible as a link in a chain of title. The certificate was offered by

the plaintiff in connection with the testimony of witnesses who had seen and examined the certificate before it was defaced and mutilated. The face of the certificate was not so mutilated or defaced as to make it unintelligible, but some of the words and parts of words were obliterated. These were supplied by the testimony of the witnesses who had examined the certificate before its mutilation. We are of the opinion that the certificate in connection with the testimony of the witnesses was properly admitted. If this, however, were not so, the appellant is not in a position to complain, for the reason that the record shows that after the appellee closed his evidence the appellant offered to put in evidence the face of the certificate. Having introduced the face of the certificate himself, appellant will not be heard to say it was improperly admitted when offered by his adversary.

3. Appellant's third, fourth and fifth assignments of error present substantially the same questions and will be considered together. Elijah L. Ward, Francis M. Pope, and John Chapman, each the head of a family, each occupied as a homestead 160 acres of the land in controversy for more than five years. Elijah L. Ward, in May, 1860, made an affidavit for pre-empting public land under Act of February 1, 1860, and on the same day he made proof of said facts by two witnesses, and on the same day filed upon 160 acres of the land in controversy, and had the same surveyed and caused the field notes and proof to be recorded in the county clerk's office of Titus County, in which county the land lay at that time, and caused the same to be returned to and filed in the General Land Office on August 8, 1861. The said survey for said Ward was platted and delineated on the official map of Titus County; an application for a patent with the patent fees was deposited in the General Land Office in 1898; the proof of occupancy by the said Ward was filed in the General Land Office on May 9, 1898. Ward and his family moved on the land in 1860, and placed improvements thereon and occupied the same as a homestead until 1866. Ward's wife and children continuously claimed to own said land up to the time they conveyed the same to the defendant in this suit. Francis U. Pope and John Chapman, each the head of a family in the year 1860, each filed and settled upon and had surveyed 160 acres of the land involved in this suit and actually occupied the same and caused the field notes to be returned to the General Land Office, and in 1898 caused to be filed proof of such occupancy in the General Land Office and made a deposit of patent fees. The field notes of the E. L. Ward survey were returned to the General Land Office about fourteen months after the survey was made; the field notes of the Pope and Chapman surveys were returned to the General Land Office within twelve months. The proofs of occupancy in each case and the deposit of patent fees were made in 1898. Neither of the tracts of land filed upon by said Ward, Pope, and Chapman were entirely surrounded by other surveys. All of said tracts were covered by the survey and location under the Thomas Casey certificate located in 1872. By section 8 of an Act of February 1, 1861, it is provided: "All heads of families

who are settled upon, or who may hereafter settle upon any vacant public domain, except those lands the sale of which is provided for in the second section of this act, shall have the privilege of purchasing 160 acres of land, or less, where it is entirely surrounded by previous surveys to include his or her improvements, in preference to all others, at 50 cents per acre." 2 Sayles' Early Laws, p. 267. The sale of this land was not provided for in the second section of the act. By the terms of this act the head of a family who is an actual settler is given the privilege of purchasing 160 acres of land or less where it is entirely surrounded by previous surveys * * * at 50 cents per acre. The record shows that none of the parties paid the 50 cents per acre, and, as has been stated, it is admitted that the land sought to be pre-empted was not entirely surrounded by previous surveys. It is insisted that payment of the purchase money was remitted by the Act of March 24, 1871. 3 Sayles' Early Laws, 109. This act is supplementary to the Act of August 12, 1870, and refers to the second section thereof for the conditions upon which the benefits of the Act of 1871 may be claimed. Said section 2 of the Act of 1870 provides, substantially that upon, "Filing in the Land Office an affidavit to the effect that such person has occupied and improved said land for three years in good faith, and had complied with the requirements of this act and paid all fees, and which affidavit shall be corroborated by the affidavits of two disinterested and credible citizens of the county in which the land is situate, and all of which affidavits shall be subscribed and sworn to before the district clerk, who shall certify to the same and to the credibility of said citizens under his seal of office." 3 Sayles Early Laws, p. 30. Proof of occupancy by the several occupants was not sent to the General Land Office until the year 1898, and the proofs as then sent were not made before, nor certified to by the clerk of the district court under the seal of his office. The affidavits in two cases were made before the county clerk and in the third case before a notary public, and there was not certificate attached as to the credibility of the citizens who acted as witnesses, or that they were residents of the county. The pre-emption laws were repealed in 1889. Gen. Laws 21st Leg., pp. 16, 17. At the time the several proofs of occupancy were filed in the General Land Office the law under which appellant bases his claim had been repealed. Unless the pre-emptors, Ward, Pope, and Chapman, had acquired a vested right in the tracts of land occupied by them respectively prior to such repeal, they lost all inchoate interest therein upon the repeal of the law under which such interest arose. Suth. on Stat. Con., secs. 162, 163. We are of the opinion that the parties did not acquire a vested right in their respective tracts prior to such repeal. They had failed to comply with the terms and conditions of either the Act of February 1, 1860, of August 12, 1870, or that of March 24, 1871. An essential requirement of each of these acts was the filing in the Land Office proof of three years' occupancy accompanied by a deposit of the fees. The Acts of 1870 and 1871 provided how the proofs should be made, before what officer, and for such officer's certifi-

cate. It appearing that the land sought to be pre-empted by Ward, Pope, and Chapman was not entirely surrounded by previous surveys, and that they nor either of them paid the 50 cents per acre as provided by said Act of February 1, 1860; and it further appearing that they nor either of them complied with the terms and conditions of the Acts of 1870 and 1871 prior to 1889, it follows that they had not acquired any vested right in the land, and that when the pre-emption laws were repealed they lost all interest which they had in the land arising under these several acts.

4. Appellant complains of the action of the court in admitting in evidence over the objections of defendant as a part of the depositions of Rhodes Fisher and W. C. Walsh, the exhibits attached to the answers of said witnesses to the interrogatories propounded to them in case No. 506, entitled Harry Anthony et al. v. J. M. Taliaferro et al. It seems that the deposition of these witnesses had been taken in the said case No. 506, pending in the same court, in which these plaintiffs were plaintiffs, but in which the defendants were not the same as those in this suit. To their depositions taken in that suit the witnesses had attached certain exhibits. When asked to attach certain instruments as exhibits to their answers to interrogatories propounded in the case at bar, they first answered, "We have done so," but subsequently they answered that the exhibits were not attached but were attached to their answers in the case mentioned, "and are hereto again referred to, affirmed, and made part of my foregoing answers in this case." The exhibits were copies of archives in the General Land Office, were properly certified to, and were read in evidence. The ground of the objection is that the exhibits were attached to the depositions of the witnesses taken in a different case and between different parties. There was no error in admitting the exhibits in evidence. The witness' answer referred to the exhibit attached to his deposition in the former case pending in the same court and fully identified the same.

5. One of the subdivisions of an interrogatory propounded to the witness Walsh was, "If there are any file or files missing from said Land Office in regard to the Casey certificate, explain the matter fully and specifically," to which the witness answered: "It appears that the original file 265, Refugio, second class one-third league, Thomas Casey by Willis Roberts, assignee, with contents, was abstracted from the General Land Office many years ago, but dates can not be ascertained." Defendant objected to the question and answer because the witness was not testifying from his own personal knowledge, and it is not shown that he is stating facts that appear from the official record or archives of his office, and it is not shown how they appear. The objection was overruled and the question and answer admitted. The objection made is in effect that by using the word "appears" the witness did not state a fact but the appearance of a fact. The witness had previously testified that, "A return of the certificate and a covering up of this transfer as indorsed on the wrapper of file 265, Red River, second class, in

which the Thomas Casey certificate No. 501 and accompanying papers were filed on their return evidently have been abstracted from the General Land Office. A certified copy of the indorsement, marked Exhibit B and signed by me for identification is hereto attached." This statement was signed by "Longley" who was then, viz., June 9, 1873, examining clerk of the General Land Office, and whose duty it was to make such indorsement. The correctness of his statement is found by the records and archives of the General Land Office. Exhibit B was read in evidence, and is as follows: "Certificate upon which these surveys are based was returned to Genl. Land Office Octr. 19th, 1840, by Willis Roberts, assignee of Thomas Casey (see 2nd Class Index). There is no evidence to show by whom, or by what authority the certificate was withdrawn from Refugio 2nd Class, File 2. In 1869 it reappeared in the office in Gonzales 2nd class—117, with a regular chain of transfers from Casey to Heard. On 13th of December, 1871, cert. and transfers were forwarded to Heard for relocation, and were returned and·filed within Apr. 27th, 1872. The back of the cert. was pasted over securely with paper the removal of which developed a transfer from Casey to Willis Roberts, dated July, 1838, not authenticated. * * * June 9, '73. Longley."

This evidence was introduced without objection. Subsequently the interrogatory answered by Walsh was offered and read over the objection of defendant. The testimony seems to be only corroborative of testimony already admitted. The witness stated all the facts, so far as the records of the General Land Office show, about the withdrawal of the Casey certificate and its return. The witness was evidently stating what the records showed in reference to the Thomas Casey certificate. We are of the opinion that there was no error in admitting the testimony.

6. It is contended that the court erred in permitting the witness W. C. Walsh to testify by deposition that: "I have compared the letters of Willis Roberts above referred to with the handwriting on the back of the Thomas Casey certificate No. 501 and find them the same, i. e., the body of the transfer on the back of the certificate, is in the handwriting of Willis Roberts. My reasons are the similarity of the formation of the letters and the general features of the two." The objection to this evidence is that the witness did not qualify as an expert and did not have before him any properly established specimen of the handwriting of Willis Roberts as a standard for comparison. The letters referred to by the witness purported to be letters from W. Roberts to the Commissioner of the General Land Office, and are dated in 1840. They were received by the Commissioner of the General Land Office, answered in 1840, filed and retained as archives, and have been acted upon as genuine. There is an entry in the register: "Thomas Casey, by assignee, Willis Roberts. * * * No. 501, 1-3 league located Refugio on Aransas Bay at Point Lookout." The letters are in relation to surveys for W. Roberts in Refugio County at Lookout Point. They

refer to a conflict with one "Robertson" survey. The records of the Land Office show that survey Refugio, second class one-third league, Thos. Casey, by assignee, Willis Roberts, was rejected because of conflict with claim in name of "Robertson." It thus, as we think, clearly appears that the letters refer to surveys made by virtue of the Thomas Casey certificate for his assignee, Willis Roberts. Walsh qualified as an expert as to handwriting. He showed his familiarity with the records of the General Land Office, and especially with the Thomas Casey certificate and transfers thereon. His testimony that the transfer on the back of the certificate to Willis Roberts and the letters were in the same handwriting, was admissible. And we are of the opinion that there was no error in admitting his further statement, that "the body of the transfer on the back of the certificate is in the handwriting of Willis Roberts." The witness testified fully as to all the facts upon which he based this statement and gave reasons for his opinion. The jury had all the facts before them. The letters were over sixty years old, related to official business of the Land Office, and, as before stated, had been acted upon as the letters of Willis Roberts. We are of the opinion that the admission of the testimony was not error.

7. The witness Charles Rogan was permitted to testify over the objections of the defendant that the report of the traveling board of land commissioners on file in the General Land Office shows that land certificates were issued in the county of Harrisburg to certain persons, naming them, and that the number of said certificates as shown by said report were not the same as the number of the certificates. The report referred to was read in evidence. The evidence did not contradict the report but was explanatory of it, and was admissible.

8. The defendant requested the following special charge, which was refused by the court: "From and after January, 1840, no land certificates of the class denominated headrights were in law valid, or authorized a survey thereunder, unless the same had been examined, passed on, and reported to the Land Office as genuine and valid by commissioners who were appointed for the purpose by the Republic of Texas, or unless the same had been passed on and established by suit for the purpose brought by the owner in some district court of the State; and any survey made by virtue of any headright land certificate which had not been established as genuine and valid by one of the methods above stated was and is null and void. Unless you believe from the evidence that the land certificate in evidence in this case, in the name of Thomas Casey, for one-third league of land, the same being a headright certificate of the second class, was examined and passed on, and recommended to the General Land Office as genuine and valid by commissioners elected for the purpose, or that same had been established as genuine and valid by judgment or decree of some district court of this State before the year 1872, the survey then made thereunder in 1872, under which plaintiffs claim the land in controversy, is null and void, and you will find

for the defendant." The report of the traveling board of land commissioners was in writing, and it was the duty of the court to construe the same. The defendant introduced the certificate in evidence in support of his case. The evidence, in our opinion, is conclusive that the certificate had been approved by the traveling land board and recommended for patent. For these reasons there was no error in refusing the requested charge.

We have carefully considered the assignments of error not discussed, and are of the opinion that they are without merit. Finding no reversible error in the record the judgment is affirmed.

Affirmed.

### ADDITIONAL CONCLUSIONS OF FACT.

Appellant has filed a motion for additional conclusions of fact, which motion is granted. We find the following additional facts:

1. The report of the traveling land board is headed: "Statement showing the number of certificates of first class issued in Harris County and recommended as genuine claims."

2. When Ward, Pope, and Chapman caused their respective surveys to be made in 1860 they were each bona fide settlers on their respective tracts and the land was part of the public domain.

3. The officers before whom the proofs of occupancy were made, to wit, the county clerk in two cases and notary public in the third case, did certify as to the credibility of the citizens who acted as witnesses, and that they were residents of the county.

These conclusions will be taken in connection with those contained in the opinion.

Affirmed.

Writ of error refused.