# MILES et al. v. WATSON et al.
## No. 2604.

Court of Civil Appeals of Texas. Beaumont.
Nov. 9, 1934.

Rehearing Denied Nov. 14, 1934.

C. L. Bass, of Houston, for appellants.

Foster, Williams & Nicholson, W. P. Mc-Comb, Crawford & Crawford, and Pitts & Liles, all of Conroe, W. D. Gordon and Thos. J. Baten, both of Beaumont, E. E. Hubman, Billingsley & Billingsley, James & Conner, and E. C. Pannell, all of Fort Worth, Powell, Wirtz, Rauhut & Gideon, of Austin, E. A. Camp, of Rockdale, C. F. Richards, of Lockhart, and John C. Bybee, Sewell, Taylor, Morris & Garwood, Andrews, Kelley, Kurth & Campbell, L. B. Moody, all of Houston, for appellees.

O'QUINN, Justice.

Appellants sued appellees in the district court of Montgomery county, Ninth judicial district, to recover a certain tract of 142 acres of land situated in said county. The various defendants (forty-seven of them) all answered and urged a general demurrer to appellants' petition, which was sustained. Appellants refusing to amend, their suit was dismissed. This appeal is from the judgment of dismissal.

Appellants alleged that they are the heirs of one Alexander Miles, who died in 1897, and whose wife died afterwards; that in the year 1892, said Miles settled upon and applied to the county surveyor of said Montgomery county to survey for him a certain parcel of land as a homestead pre-emption by virtue of articles 3926 and 3927 of the Revised Statutes of Texas of 1879, and under the provisions of an Act of April 24, 1879 (Acts 1879, c. 145); that said surveyor surveyed the land and recorded the field notes in his office, and that said field notes of said survey were filed and recorded in the general land office; that said Miles and his family continued to reside upon said land until his death in 1897, and attached to the petition, as exhibits, copies of Miles' application and the field notes of the survey. There were many other allegations of facts in appellants' petition, but as they related, in the main, to supposed defects in the title of appellees, they will not be stated. Also other exhibits were attached to the petition, but they, too, related to the title of appellees. Among them was an Exhibit J, the patent from the state to J. T. Watson to the land, issued November 21, 1908. It was not alleged by appellants that proof of occupancy was ever made or offered to be made by Miles or any one else of his occupancy of the land, or that he or any one else ever paid or tendered payment of the necessary fees to obtain patent to the land.

As disclosed by the pleadings, the facts are that Miles on May 21, 1892, made application for survey of the tract described in the petition, by virtue of articles 3926 and 3927, R. S. 1879, he claiming to be occupying the land. The land was surveyed by the county surveyor, and the field notes filed in his office June 2, 1892, and recorded in the general land office on July 23, 1892. Miles died about 1897. August 22, 1893, J. T. Watson went on the same land and made application for a survey of same as a pre-emption homestead for himself and family. The survey was made by L. Burns, the county surveyor, and the field notes recorded in his office, and filed in the general land office on September 11, 1893. The report of this survey made by Burns, the county surveyor, to the general land office stated that Miles had abandoned his claim to the land, and that the application of Watson for same had been accepted and that he had

again surveyed the land and filed the field notes in his office on August 25, 1893. The field notes were filed in the general land office on September 11, 1893. Under Watson's application, survey, and occupancy of the land, proof of occupancy and payment of the necessary fees were made and patent issued to Watson on November 21, 1908. The defendants hold under the Watson title.

■ While appellants brought suit in trespass to try title on general allegations of trespass, yet they went further and pleaded their title specially and, therefore, their general allegations of trespass fall because followed by their special pleading. In other words, by specially pleading the facts upon which they base their title they must prove same as pleaded, and if the title as specially pleaded does not appear good, then the petition is subject to general demurrer. Snyder v. Nunn, 66 Tex. 255, 18 S. W. 340; McDonald v. Red River County Bank, 74 Tex. 539, 12 S. W. 235; Herndon v. Hayter (Tex. Civ. App.) 28 S.W. (2d) 885 (writ refused); Lynch v. Bank (Tex. Civ. App.) 50 S.W.(2d) 418 (writ refused); National Lumber & Creosoting Co. v. Maris (Tex. Civ. App.) 151 S. W. 325 (writ refused).

Appellants' petition alleged that Miles made his application under articles 3926 and 3927 of the Revised Statutes of 1879. Article 3926 read:

"Any person desiring to acquire any portion of the public domain as a preemptor, and who is entitled to a preemption under the provisions of this chapter, shall present to the surveyor of the district or county in which the land is situated his application in writing, designating the land which he claims, and stating that he claims the same for himself in good faith, under the laws granting land to preemptors, that he is not the proprietor of one hundred and sixty acres of land in this state, and that he has no residence on land of his own, and that he has actually settled upon the land which he claims, and that he believes the same to be vacant and unappropriated public domain."

Article 3927 read:

"Said application shall be made at the time of settlement or occupancy of the land, or within thirty days thereafter, and shall be sworn to before some officer authorized to administer oaths, and shall be filed with the said surveyor and recorded by him in a well-bound book kept for that purpose."

The Act of April 24, 1879, referred to in the application, was an act for the relief of actual occupants of public lands, extending the time in which to make applications for acquiring same, and has no application here.

Articles 3928, 3929, and 3930 provided that the land should be surveyed and the field notes returned to and filed in the general land office, and the payment by the pre-emptor to the state of $1 per acre for the land surveyed, and that when the terms and conditions of the pre-emption right required by law had been complied with, patent should issue to the pre-emptor.

Article 3933 provided:

"Should any preemptor fail to make the written application as provided in this chapter, and within the time therein prescribed, or should he fail to have the survey made and the field-notes thereof duly certified and recorded, returned to and filed in the general land office within twelve months after the date of said survey, or should he fail to make the proof of settlement or occupancy, or should he fail to make payment for said land, as provided in this chapter, he shall, in either event, forfeit all right and title to said land, and the same shall become subject to entry or location as other vacant and unappropriated land."

According to the allegations of appellants, Miles made application for the land in 1892; he occupied the land until 1897, when he died; and the field notes of the survey were filed in 1892. This was all that was done under the Miles application. No allegations that proof of occupancy was made, nor that payment for the land was made, as was required for obtaining patent or title to the land. It was further alleged by appellants that J. T. Watson in 1893 made application to pre-empt the same land, had survey made and field notes filed and recorded, filed proof of occupancy, and in 1908 secured patent to the land. It thus appearing from the first of appellants' petition that they were not entitled to maintain their action for the land, the general demurrer of defendants was properly sustained. Article 3933, R. S. (1879), supra; Snyder v. Nunn, 66 Tex. 255, 18 S. W. 340; McDonald v. Red River County Bank, 74 Tex. 539, 12 S. W. 235; National Lumber & Creosoting Co. v. Maris (Tex. Civ. App.) 151 S. W. 325 (writ refused); Herndon v. Hayter (Tex. Civ. App.) 28 S.W.(2d) 885 (writ refused); Lynch v. Bank (Tex. Civ. App.) 50 S.W.(2d) 418 (writ refused).

Furthermore, if appellants had not specially pleaded their title and had tried the case on their general allegations of trespass, and it then appeared, as it does in their petition,

that they had an incomplete pre-emption, they could not have maintained their action, for that sort of title will not support an action of trespass to try title. The Supreme Court in Conn v. Franklin, 19 S. W. 126, 127, in discussing this question upon similar facts, said:

"It appears from the evidence to have been an application for pre-emption, and the plaintiff has utterly failed to make out his case. He does not show that the law has been complied with, either with respect to occupation of the land or payment of the purchase money."

■■■ All through the pre-emption laws of Texas runs the requirement that one, in order to acquire title to land by virtue of said laws, must do the following things to perfect his title: First, designate his land (Miles did this). Second, have the land surveyed (he did this). Third, must return his designation and field notes to the land office for filing and record (Miles did this). Fourth, must make proof of three years' occupancy and file same in the general land office. This Miles did not do nor was same done by any person. Fifth, make payment for the land. (This was not done by Miles nor any one claiming under him. Article 3933, supra, provides that failure to do any or either of these requirements forfeits all rights and title of the pre-emptor to the land. There is no claim, nor is it alleged that Miles or any one claiming under him went any further in attempting to pre-empt the land than to designate it and file the field notes for record. This fell far short of maturing an equitable right to the land.

But it is insisted by appellants that the allegations in their petition that Miles designated the land in 1892, and had the field notes filed and recorded in the office of the county surveyor and in the general land office, and that he continued to reside upon the land until his death in 1897, must be taken as true. That he is thus shown to have, at the time of his death, resided upon the land for more than three years after its designation and the filing of the field notes, and that as the statute did not specifically say that proof of occupancy should be made and the required fees should be paid by his heirs, they in consequence took and held his rights to the land free from such requirements, and at the death of Miles his heirs inherited and held full equitable title and right to the land. This contention is without merit. Article 3946 of chapter 9, Revised Statutes of 1879, is made the basis of this contention. It read:

"When the original occupant or his assignee is dead, the patent shall issue to his heirs on application of the surviving widow, one of the heirs or his legal representative."

This provision is in chapter 9 relating to "Homestead Donations." The provisions in chapter 8 relate to "Exemptions." It was under these that Miles made his application, for he says in his application that same was presented under articles 3926 and 3927, and these are in chapter 8—pre-emptions. But, in any event, appellants' contention is without weight for chapter 9, homestead donations, contains articles 3939 to 3948, which require the applicant to designate the land, have same surveyed, and the field notes filed in the general land office, reside three years continuously upon the land after its designation and survey, make proof of the occupancy, and payment of office and patent fees, in order to obtain patent, and article 3948 provides that failure to perform any or either of these requirements forfeits any and all rights of the applicant to title. Manifestly, the Legislature enacting the law had no intention to confer upon the heirs any greater rights than those possessed by their ancestors. Appellants cite us to no case so holding, nor have we been able to find any case supporting this novel proposition, and we do not believe any such case can be found.

■■ It is well settled that the provisions of these laws were mandatory, and the failure to comply with any one of them barred the rights of the applicant to title. Pope v. Anthony, 29 Tex. Civ. App. 298, 68 S. W. 521 (writ refused); Gallup v. Thacker, 103 Tex. 310, 126 S. W. 1120; Taylor v. Southwestern Lmbr. Co. (Tex. Civ. App.) 47 S.W.(2d) 401 (writ refused); Armstrong v. Walker (Tex. Com. App.) 73 S.W.(2d) 520; Conn v. Franklin (Tex. Sup.) 19 S. W. 126; Wood v. Collins (C. C. A.) 60 F. 139 (construing Texas land law).

Appellants discuss the patent to Watson and say same was a fraud upon the rights of the heirs of Miles, and that said patent was fraudulently procured from the state. We do not believe that any such question has a place in the case, but if so, it is sufficient to say that the legality of a patent can be attacked only by the state, or by one having a right in the land prior to that of the patentee. In other words, the title of one holding land by patent from the state, if the patent was acquired by fraud, is not open to attack except by the state, or by one having a prior equitable or legal right to the land. Wing v. Dunn, 60 Tex. Civ. App. 16, 127 S.

W. 1101 (writ refused—written opinion, Dunn v. Wing, 103 Tex. 393, 128 S. W. 108). Under the decisions cited, supra, neither Miles nor his heirs performed the things nor met the conditions necessary to maturing a complete equitable title or right to the land, and so cannot here attack the legality of the patent to Watson under whom appellees claim. Furthermore, it is elementary that in suits of trespass to try title the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of that of his opponent.

It appearing from the allegations of appellants' petition that they had no title to the land, the general demurrer was properly sustained. The judgment is affirmed.