NEW YORK AND TEXAS LAND COMPANY, LIMITED, V.
R. M. THOMSON.

No. 6921.

1. **Floating Land Certificates—Location.**—It seems that when a valid location is once made upon unappropriated public domain any subsequent floating of the certificate would be illegal, and if the owner of a land certificate should survey vacant land by virtue of his certificate such survey deprives him of the right afterward to float it and locate it elsewhere.

2. **Surveys—Calls.**—Surveys beginning at a known point were platted in a block without actual survey upon the ground. The initial point was upon a river. Guessing at its course, a number of the surveys called for it on both sides. Each survey had calls for course and distance. *Held,* that while the surveyor may have intended to appropriate the land up to and across the river, but not knowing where it actually was, no random calls therefor will control course and distance. The surveys must be

run out as platted, disregarding the imaginary calls for the river. The calls for distance giving out west of the river, the surveys will not be extended across it.

3. **Illegal Location—Extension Across Navigable Stream.** — A survey extending across a navigable stream is illegal, and to the extent that it goes across such stream the survey can not be a basis of equitable ownership preventing the location upon the land by others.

4. **Limitation of Vitality of Land Certificates.**—Section 2 of article 14 of the State Constitution prescribes: "All unsatisfied genuine land certificates now in existence shall be surveyed and returned to the General Land Office within five years after the adoption of this Constitution, or be forever barred; and all * * * hereafter issued by the State shall be surveyed and returned to the General Land Office within five years after such issuance, or be forever barred." This applies to the original certificate, and not to the certified copy which may be made by the Commissioner of the Land Office for use after the original has been returned to that office. The copy is not an issuance of a certificate, but evidence of the original.

5. **Land Office Copy of Land Certificate.**—The Commissioner of the General Land Office is an executive officer of the State, and has no authority to bind it by renewing its obligations, and there is no law that authorizes him to do so. His copies of land certificates are only evidence of the original, or of what remains of it.

6. **International & Great Northern Railway Certificates.**—That the certificates were issued for a valuable consideration can not make any difference, for the State had the right to fix a time of limitation to all land certificates.

7. **Suit to Compel Survey.**—Suit to compel a survey prosecuted with vigilance will excuse the delay in returning the certificate and field notes.

8. **Illegal Survey.**—Although the surveyor is a public officer, yet it being the duty of the land locator to prove a legal survey made, the consequences of a mistake of the surveyor fall upon the owner.

Appeal from Travis. Tried below before Hon. W. M. Key.

This controversy arose over the file and location by the appellee R. M. Thomson of certain land certificates owned by him upon land which the appellant the New York and Texas Land Company, Limited, claimed to have already appropriated by valid files, location, and surveys.

The suit was originally brought in the District Court of Kinney County by R. M. Thomson, appellee, against W. M. Locke as district surveyor of Bexar Land District, and the appellant the New York and Texas Land Company, Limited. The original petition was filed March 1, 1884.

Plaintiff Thomson prayed for a mandamus to compel the defendant Locke, as district surveyor as aforesaid, to survey certain lands situated on Devil's River, in what was then Crockett County, which were claimed by the appellant the New York and Texas Land Company, Limited, and which had been filed upon by the appellee Thomson.

The case was tried in the District Court of Kinney County upon a plea to the jurisdiction by Locke, and demurrers by the appellant herein. The court below sustained both the plea to the jurisdiction and the demurrers, and Thomson brought the case to this court by appeal. This court reversed the judgment of the court below, and remanded the case for trial. See Thomson v. Locke, 66 Texas, 383.

During the pendency of the suit the Legislature created the county of Val Verde, and the land in controversy was included within its boundaries. The venue of the case was by agreement changed first to Val Verde County, and thence by agreement transferred to Travis County. Val Verde County completed its organization as a separate land district on the 21st of August, 1887.

On December 4, 1888, the appellee Thomson filed in the District Court of Travis County his first amended original petition, wherein he made John K. Pierce party defendant as the county surveyor of Val Verde County, and prayed for a mandamus against him to compel the survey. Plaintiff Thomson also asked for judgment against Locke for $4000 damages for refusing to make the surveys, and for judgment against the appellant herein, "divesting the title out of said company to said land and investing the same in plaintiff."

Plaintiff alleged, that in March, 1883, he had filed upon the land in controversy by virtue of genuine and valid land certificates, and that the land was at the date of said file vacant and unappropriated public domain of the State of Texas. Plaintiff further alleged, that of the lands which he claimed under the file and entry as shown by exhibit A to his petition, the defendant the New York and Texas Land Company, Limited, asserted some sort or pretended claim to a large part thereof, as would more fully appear by exhibit B, wherein the field notes of each tract of land so claimed by said defendant adversely to the plaintiff, and the certificate by virtue of which said surveys were made for said defendant or its vendors, including its number and the quantity of land called for by it, appeared.

That the field notes, and the certificates under and by virtue of which defendant's surveys were made, were returned to the General Land Office of Texas after they were barred by the statute of limitations, and were null and void against all persons whomsoever; not having been surveyed and returned to the General Land Office within five years after the adoption of the present Constitution of the State of Texas; the said certificates being in existence and unsatisfied at the date of the adoption of said Constitution. All of which would appear by an inspection of the originals of said certificates referred to in said exhibit B. All of which said originals were then in the General Land Office of the State of Texas.

The land in controversy was located by Thomson, under the claim that appellant's certificates covering the same land were forfeited under article 14, section 2, of the Constitution of Texas.

On June 4, 1888, the appellant filed its first amended original answer, denying that the land in question was at the date of plaintiff's files vacant and unappropriated public domain; and alleging that the same was the property of the said defendant company, and setting out in full the facts and circumstances out of which the title of the said com-

pany grew, and denying that the said title was barred by the statute of limitations.

On December 17, 1888, the appellant filed its first supplemental answer, by way of replication to plaintiff's first amended original petition filed December 4, 1888, and specially demurred to portions of the same, pleaded the general issue, and also that the land certificates under which plaintiff claimed were barred by the statute of limitations, because they were not surveyed and returned to the General Land Office within five years from the date of their issuance.

Under the plaintiff's amended petition, Locke was only retained as defendant for the purpose of defending the suit against him for damages, to which he answered, and no judgment was rendered against him.

Defendant Pierce, surveyor of Val Verde County, answered, waiving all questions of jurisdiction, and pleading general denial.

The case was tried in the District Court of Travis County without a jury, on December 22, 1888, and resulted in a judgment for the plaintiff Thomson against the New York and Texas Land Company, Limited, for the land in question, cancelling appellant's title thereto and ordering that the defendant John K. Pierce, surveyor of Val Verde County, survey the land in question for the plaintiff Thomson within ninety days from the adjournment of the court. Judgment was also rendered against the defendants for costs. From this judgment the New York and Texas Land Company, Limited, alone appealed.

At the request of the appellant, the judge who tried the case below filed his findings of fact and conclusions of law, and in addition to the errors assigned raising questions of law for consideration on appeal, appellant has assigned errors in the findings of facts. A full statement of the facts proved on the trial of the case is in the record.

In May, 1875, the State of Texas issued to the International & Great Northern Railway Company a large number of land certificates. In 1876 and 1877 the appellant, admitted to be the owner of the certificates, caused the certificates in question in this case to be located and surveyed on land situated on and near Devil's River, Crockett County, Texas, then a part of Bexar Land District. The surveys were made by Jacob Kuechler, deputy surveyor of Bexar Land District, who was sent out by the owner of the certificates to locate and survey them on land on Devil's River. He made the surveys and returned the field notes thereof, together with the certificates, and a sketch or map showing the location of the surveys, to the General Land Office. The certificates and field notes and the map accompanying the same were all returned to the General Land Office as early as August 17, 1877.

It was Kuechler's intention, and the instructions of the owner of the certificate to him were, to place the surveys on Devil's River, which he intended to do, and supposed he had done so. But as a matter of

fact he made no actual survey on the ground, and from certain corners which he fixed platted in the surveys, and made calls in the field notes for Devil's River of such of them as he supposed crossed that river. His surveys included several blocks.    He actually established on the ground the northeast corner of survey No. 84, block I, and the southwest corner of survey No. 26, block C, about eleven miles distant up the river, and finding the country between these points difficult to survey, he projected and platted in the intermediate surveys from these points, supposing that he had placed them upon Devil's River.    He was mistaken as to the true course of the river.    It made a considerable bend from the point from near the place where he established the southwest corner of survey No. 26, block C, and ran two or three miles to the east of where he supposed it was, when it deflected and again ran south.    He mistook a dry canyon for Devil's River, and placed the surveys so as to about fit the canyon; and was otherwise mistaken as to the course of the river.    The accompanying sketch will illustrate the position of Kuechler's supposed course and the true course of the river:

Most of the land in controversy lies on the east side of the river, between A and B.

These surveys remained in the General Land Office without any action being taken thereon until 1880. In the meantime the Commissioner of the General Land Office had received information which satisfied him that Devil's River was, under the law, a navigable stream. He therefore held that the Kuechler surveys, having been made in a square form and crossing the river, were illegal, as located across a navigable stream, and could not be patented.

Up to this time it was taken for granted that the surveys lay upon Devil's River. Upon this ruling being made by the Commissioner, the appellant through its agents applied to the Commissioner for permission to file corrected field notes so as to make the surveys conform to the ruling. This the Commissioner refused to permit, and ruled that the only mode in which the correction would be permitted would be by the issuance of certified copies of the certificates for relocation.

Appellant accepted the certified copies, and proceeded to have them resurveyed. George W. Angle, who represented the appellant in the matter, supposed that the copies took new life and would be good for five years longer, and so understood the opinion of the Commissioner to be. After the copies had been issued, and at about the time of the resurvey, Kuechler's mistake in the original locations was discovered, and it was ascertained by the calls for course and distance of the original locations that Devil's River would not be reached by a considerable distance.

These copies of the certificates, which had been floated for the purpose of having them resurveyed so as to front only half the distance on the river as was required by law when locations were made on navigable streams, were many of them relocated on the land in controversy, but no one of them upon the same land on which the original certificate had been first located. A part of the land in controversy was surveyed by virtue of unlocated balance certificates, but none of these had been previously located upon any part of the land in controversy. Six of the relocated surveys in controversy were by virtue of certificates floated because found in conflict with older titles. Many of the surveys in fact crossed Devil's River, and these were illegal surveys.

Unless the calls for course and distance should be disregarded and the calls for Devil's River observed, none of the original locations would be upon any part of the land in controversy except the surveys by virtue of the following certificates, which all appear to have crossed the river: Certificate 4743, survey 14, block I; certificate 4744, survey 15, block I; certificate 4754, survey 25, block I; certificate 4753; survey 24, block I; certificate 4752, survey 23, block I; certificate 4742, survey 13, block I; certificate 4777, survey 25, block C; certificate 4778,

survey 24, block C; certificate 3537, survey 21, block A; certificate 333, survey 52, block A.

More than five years elapsed from the date of the Constitution of 1876, at which time all of the original certificates by virtue of which appellant had located the land in controversy were in existence, until the certified copies of the certificates were surveyed and returned to the General Land Office, May 16, 1881. Appellee made his locations upon the land in controversy March 30, 1883.

[This statement accompanied the opinion.]

*Ogden & Johnson* and *John A. & N. O. Green*, for appellant.—1. Under the ordinary rules of construction calls for a natural object, such as a river, will control the calls for course and .distance. Oliver v. Mahoney, 61 Texas, 612; Morrill v. Bartlett, 58 Texas, 644; Robinson v. Doss, 53 Texas, 496; Stafford v. King, 30 Texas, 258.

2. It having been proved by the surveyor who made the surveys that no actual survey was made upon the ground of the surveys in question, the intention of the surveyor will govern. Moore v. Reiley, 68 Texas, 670; Boon v. Hunter, 62 Texas, 588; Jones v. Andrews, 62 Texas, 653; Galveston County v. Tankersley, 39 Texas, 651; McAninch v. Freeman, 69 Texas, 447.

3. The map of the surveyor who made the surveys will be considered as a strong circumstance in showing the location of the surveys.

4. A formal entry of a duplicate certificate at a certain date does not preclude the locator from proving that a location of the original certificate had been previously made by him upon the same land and that the adverse party had actual notice thereof; the latter entry being therefore but a renewal of the former. Morris v. Byers, 14 Texas, 278.

5. The fact that the original surveys were made in a square form so as to cross a navigable stream was merely a violation of a directory statute, and did not render. the surveys void. Rev. Stats., art. 3911; Horton v. Pace, 9 Texas, 81.

6. The appellant, in a properly directed endeavor made in good faith to apply its certificates to public land, having been misled, delayed, and hindered by the mistakes, blunders, and neglect of duty of the deputy district surveyor, and in pursuit of its original intent, and for the purpose of perfecting its title to the land, having obeyed the instructions of the Commissioner, and having pursued the only course that would be allowed by that executive officer of the State, its rights ought not to be affected or defeated; especially at the instance of one who, having full knowledge of all the facts, seeks to take advantage of the mistake for that purpose. Johnson v. Eldridge, 49 Texas, 507; Chadoin v. Magee, 20 Texas, 477; Magee v. Chadoin, 30 Texas, 645; Morris v. Byers, 14 Texas, 278; Adams v. Railway, 70 Texas, 278.

7. The court erred in not holding that the provisions of article 14, section 2, of the Constitution of the State of Texas is a statute of limitations, and was therefore to be strictly construed, and that the appellant having had the certificates located and surveyed and returned to the General Land Office of the State of Texas within five years, the statute was literally complied with, and the certificates of appellant were not affected by the bar. House v. Talbot, 51 Texas, 467; Booth v. Strippleman, 61 Texas, 382; Morris v. Byers, 14 Texas, 284; Morris v. Brinlee, 14 Texas, 285; Wood on Lim. of Act., sec. 4; Sedg. Const. Stat. and Const. Law, pp. 120, 121, et seq.

8. The certified copies of certificates and unlocated balance certificates in question in this case having been issued by the Commissioner of the General Land Office, the duly authorized agent of the State, acting in good faith within the scope of his authority, are the binding acts of the State, and carry with them all legal consequences as such. Rev. Stats., arts. 2780, 3888, 3809, 3893, 3885, 3889, 3883, 3953, 3954, 3965; Chadoin v. Magee, 20 Texas, 477; Magee v. Chadoin, 30 Texas, 645; Edwards v. James, 7 Texas, 373; Jones v. Garza, 11 Texas, 207; Johnson v. Eldridge, 49 Texas, 507; Commissioner v. Smith, 5 Texas, 471; Mason v. Russell's Heirs, 1 Texas, 728; Deen v. Wills, 21 Texas, 642; Johns v. Pace, 26 Texas, 270; Adams v. Railway, 70 Texas, 252; Sedg. Stat. and Const. Law, sec. 328; Angell on Lim., sec. 261; Rev. Stats., arts. 3887, 3890; Booth v. Strippleman, 61 Texas, 382; Thomson v. Locke, 66 Texas, 383; Edwards v. James, 13 Texas, 54; Ellis v. Batts, 26 Texas, 703; Wood on Lim. of Act., sec. 64, p. 128; Angell on Lim. of Act., sec. 208; Bish on Con., secs. 1359–1363.

As to nonperformance being excused when caused by the fault of the other party to the contract: 1 Whart. on Con., secs. 603, 604.

9. The provision of section 2 of article 14 of the Constitution under consideration being at most but a statute of limitations, and subject to the rules of construction applicable to such statutes, and the certified copies of duplicate certificates and the unlocated balance certificates possessing all the elements and requirements of acknowledgments and new obligations, the statute began to run only from the date thereof.

*Rector, Moore & Thomson*, for appellee.—1. None of the certificates under which the Kuechler surveys were made attached to or appropriated any of the land in controversy at the time of Thomson's files thereon. Const., art. 14, sec. 2; Rev. Stats., art. 3888.

When the new surveys are allowed as corrections: Rev. Stats., arts. 3918, 3919.

When they are relocations and must be governed by rules of the original acquisition of land: Rev. Stats., arts. 3888, 3894, 3895, 3901; Railway v. Thompson, 65 Texas, 187.

A withdrawal of a certificate from the Land Office and then relocating it was formerly an abandonment of the old survey: Johnson v. Eldridge, 49 Texas, 507; 2 Pasch. Dig., art. 7096.

A taking out a copy from the Land Office and locating it on other land than that embraced in its first location has the same effect: Rev. Stats., arts. 3888, 3809; 2 Pasch. Dig., art. 7099oo.

Articles 3888 and 3898 each contemplate that a certificate when once located on vacant land shall stay there, but if floated and located on other land, the action of the surveyor in the one case and of the commissioner in the other is valid, and no third party can question the virtue of the floated certificate to acquire new land.

Incipient title to land is lost by abandonment: Austin v. Dungan, 46 Texas, 244; Dikes v. Miller, 24 Texas, 424; Hollingsworth v. Holshousen, 17 Texas, 48; Hughes v. Perry, 21 Texas, 779.

2. The court rightly held that appellant's certificates (copies) now on the land in controversy were barred, and had no capacity to acquire or hold said land at the date of Thomson's files thereon. Const. 1876; Const., art. 14, sec. 2; Thompson v. Locke, 66 Texas, 383; Adkinson v. Ward, 61 Texas, 388; Hanrick v. Dodd, 62 Texas, 91; Winsor v. O'Connor, 69 Texas, 579.

3. Thomson's certificates were kept alive by this suit. Thomson's certificates were alive and valid when he filed them on the land in controversy. Booth v. Strippleman, 61 Texas, 381, 382; Ellis v. Batts, 26 Texas, 703; Edwards v. James, 13 Texas, 54.

4. The appellant had no title to the land in controversy. Its possession, like its title, was a nullity that did not affect appellee. Hanrick v. Dodd, 62 Texas, 91; Adkinson v. Ward, 61 Texas, 388; 50 Texas, 583; 55 Texas, 11; Winsor v. O'Connor, 69 Texas, 579; Cox v. Railway, 68 Texas, 231.

GARRETT, PRESIDING JUDGE, *Section B.*—There are but two controlling questions in this case:

1. Whether the calls for Devil's River made in the original surveys of Kuechler should be extended so as to cross the river, or should yield to course and distance.

2. Whether the constitutional bar against land certificates, when copies and unlocated balances have been issued, should run from the date of the Constitution, when they are in existence then, or from the date of the copies or unlocated balances.

If it should be ascertained that the calls for Devil's River in the field notes of Kuechler's original surveys should control, then the most of the land in controversy, which lies on the east side of the river, would apparently be covered by the original locations; and it is contended that although such locations might be illegal in having been surveyed across the river, yet the statute in such case is only directory,

and appellant would be such equitable owner of the land as to render invalid the locations of Thomson; and that this would be so notwithstanding the fact that it had floated the original certificates and located them elsewhere, and covered the land with other certificates.   There is but one cause in the Revised Statutes (art. 3888) for which a certificate when once filed on land may be floated and located elsewhere, and that is when the location is in conflict with an older title, and then only to the extent of such conflict.   And it seems that when a valid location is once made upon unappropriated public domain, any subsequent floating of the certificate would be illegal; and if the owner of a land certificate should survey vacant land by virtue of his certificate, such survey deprives him of the right afterward to float his certificate and locate it on other land.   Adams v. Railway, 70 Texas, 252.

Kuechler intended to place the surveys on Devil's River; but in his attempt to do so he evidently mistook the true course of the river, and was misled by a dry canyon and the general course of the river as he found it when he established the southwestern corner of survey No. 26 in block C of the surveys, and the northeast corner of No. 84 in block I.   It is true that the remaining surveys were not run out upon the ground, but were platted in on his map.   They were platted in, however, from initial points fixed and clearly defined upon the ground. Kuechler may have intended to appropriate the land up to and across the river, but as he did not know where the river actually was, no random call therefor will control course and distance when there is a clearly defined starting point.   It would be utterly at variance with all the rules upon the subject so to hold.   These surveys must be run out as platted in accordance with the field notes, the calls for Devil's River yielding to the calls for course and distance (Sanborn v. Gunter, 17 S. W. Rep., 120, 121), and the attempt or intent to locate them upon the river would not be an equitable appropriation of the land. They are west of the portion of the land in controversy, across the river from it, and if run out in accordance with calls for course and distance would include no part thereof.

Of the remaining surveys affecting the land in controversy, some were floated from other locations and surveyed upon it; and some that embraced a portion of it were floated therefrom and located elsewhere; but only a small portion of the land in controversy across the river was originally covered by prior locations of the appellant.   All of these surveys which had been floated were floated from locations actually astride of the river and made in violation of the law, which forbade it, and were consequently illegal.   It was impracticable to correct the field notes so as to comply with the law, and yielding to the directions of the Commissioner of the General Land Office, appellant's agent (George W. Angle) floated them and relocated the certified copies.   It is probable that in strict compliance with the law these sur-

veys would be held to be forfeited and the certificates by virtue of which they were made of no further validity; but the attempted location was at any rate in violation of the law, and was not of sufficient validity to create any equitable title to the land in the appellant. Nor was there any such appropriation of the land by the appellant that its possession thereof would protect the land from subsequent location by virtue of a valid certificate. Const. 1876, art. 14, sec. 2.

Thomson's locations were made to cover these abandoned surveys and the land east of the river which had not been originally surveyed for the appellant. At the time of Thomson's locations, however, the appellant had already surveyed all of the land by virtue of certified copies and unlocated balances of certificates which had been formerly floated or in part located.

As we are of the opinion, in the first place, that the land on the opposite side of the river from the original surveys between survey No. 84, block I, and No. 26, block C, was not included by them, and in the second place, that the original locations upon portions of the land in controversy were illegal because they were placed astride of the river, and the certificates having been floated the surveys were abandoned, it then becomes necessary to consider the question of limitations, which will affect the entire land in controversy, except four surveys by virtue of unlocated balances, the field notes of which were returned before April 18, 1881, and as to these the appellee did not recover.

That part of section 2, article 14, of the Constitution of 1876 which it becomes necessary for us to consider is as follows: "All unsatisfied genuine land certificates barred by section 4, article 10, of the Constitution of 1869, by reason of the holders or owners thereof failing to have them surveyed and returned to the Land Office by the 1st day of January, 1875, are hereby revived. All unsatisfied genuine land certificates now in existence shall be surveyed and returned to the General Land Office within five years after the adoption of this Constitution, or be forever barred; and all genuine land certificates hereafter issued by the State shall be surveyed and returned to the General Land Office within five years after issuance, or be forever barred." It was evidently the purpose of the Constitutional Convention to require all land certificates to be located within five years or forfeited. The policy was adopted by the Convention of 1869, and the construction placed by the Convention of 1875 on the clause of the Constitution of 1869 shows that all certificates then unlocated were deemed to be of no further validity, and they were in terms given new life. A land certificate is merely the obligation of the government entitling the owner of it to secure the designated quantity of land by following the requirements of the law. Cox v. Bray, 28 Texas, 261. One requirement of the law is, that the field notes shall be returned with the certificate to the Land Office within twelve months after the survey. If this is not done the

location is void, and a subsequent locator may appropriate the land. These requirements are not for the benefit of the State, but any person may avail himself of the failure on the part of the owner of the land certificate and location to comply therewith. If the owner of a certificate should file upon land and cause the same to be surveyed, but should fail to have his field notes and the certificate returned to the Land Office before the expiration of the five years, it will require no action on the part of the State to forfeit the location, but it would be the duty of the Commissioner of the General Land Office to refuse to take any step looking to a patent. The survey would become void, with nothing to support it, and any one might show its nullity in any proceeding.

A certified copy of a certificate is mere evidence of the existence and contents of the original, and an unlocated balance certificate is only the certificate of the Commissioner of the General Land Office that there remains unlocated of the original certificate a certain number of acres which the owner may still locate. The Commissioner of the General Land Office is an executive officer of the State, and has no authority to bind the State by renewing its obligations; and there is no law which authorizes him so to do. The law in proper cases authorizes the issuance of certified copies of certificates and certificates of unlocated balances, but only as evidence of the original certificate, or what remains thereof unlocated. It will not be contended that it was the purpose of the law in authorizing the issuance of such copies and unlocated balances to give new evidence of the right of the owner of the certificate, for such was not the case. Whenever an original land certificate has been surveyed and returned to the Land Office it is kept there in order to prevent frauds, and such was the purpose of the law requiring it to be done. It can not be withdrawn under any circumstances, and if it should become necessary to relocate it by reason of conflict in good faith with older surveys, the relocation is made by virtue of a certified copy, the use of the original being waived, because it is better to keep it in the Land Office. Formerly it was the custom, it is said, whenever a part of a certificate was located, for the Land Commissioner to indorse a memorandum on the certificate showing how much had been located, and to deliver it back to the owner for location of the balance. In 1854 a law was passed correcting this also, and requiring the Land Commissioner to retain the certificate and give his certificate showing how much of the original was unlocated. Opinion Hon. J. H. McLeary, Attorney-General, May 31, 1881.

Thus we see it has been the steady purpose of the State to set a limitation to the time within which land certificates should be surveyed and returned to the Land Office, and to hedge them about with safeguards and restrictions to prevent the perpetration of frauds; and the certified papers given out by the Commissioner of the Land Office

with respect thereto were never intended to be and could not be a novation of the obligation of the State to grant land. We think that the certified copies and unlocated balance certificates were only evidence of what they purported to be, and did not give new life to the original certificates. That the certificates under which the locations were made by the appellant were issued by the State for a valuable consideration, having been granted to the International & Great Northern Railway Company by an act of the Legislature in settlement of the claim of said company against the State for bonds, can not make any difference, for the State had the right to fix a time of limitation to all certificates.

This suit having been brought before the expiration of five years from the date of Thomson's certificates by virtue of which he has filed on the land in controversy, the constitutional bar does not apply to them. Booth v. Strippleman, 61 Texas, 381, 382.

It was the duty of the appellant to see that the lands which it sought to locate were properly surveyed by Kuechler; and although the latter was a public officer—a deputy district surveyor—still the appellant was bound to see that the surveys were made upon the land which it desired to appropriate, and the failure of Kuechler to do his duty in this respect would be no excuse for the appellant.

The remaining assignments of error present no material question not already disposed of, and it is not necessary to notice them.

We find no error in the judgment of the court below, and think that it should be affirmed, and so report.

*Affirmed.*

Adopted December 15, 1891.

A motion for rehearing was transferred to Galveston, and there overruled.