FIELDER et al. v. HOUSTON OIL CO. OF TEXAS et al. (No. 29–2661.)

(Commission of Appeals of Texas, Section B. Jan. 15, 1919.)

1. PUBLIC LANDS ⬅⟿175(7)—LOCATION—CONFLICTING LOCATIONS—"TITLED LANDS."

Under Const. 1869, art. 10, § 3, which declares null and void all certificates for land located after October 30, 1856, upon land titled before location of certificate, and Const. 1876, art. 14, § 2, "titled lands" are those within boundaries of patents from the state, and lands not patented, although erroneously indicated as within patent boundaries by a general land office map, were not "titled lands."

2. CONSTITUTIONAL LAW ⬅⟿278(1) — DUE PROCESS—RIGHT IN PUBLIC LAND.

Const. 1869, art. 10, § 3, declaring null and void certificates for land located after October 30, 1856, upon land previously titled, cannot be construed to affect any right vested in 1866 in view of Const. U. S. Amend. 14.

3. PUBLIC LANDS ⬅⟿175(½)—RIGHT TO LOCATE—"CLOSE OF THE WAR."

The "close of the war," as used in 6 Gammel, Laws, 669, approved December 14, 1863, suspending all laws authorizing location and sale of public lands until such time, dates from closing of actual war in Texas May, 1865, and not from presidential proclamation thereof as of August 20, 1866.

4. EVIDENCE ⬅⟿11—JUDICIAL NOTICE—STATE LAND OFFICE IN OPERATION AT CERTAIN TIME.

The court will take judicial notice that the land office of the state of Texas during the first seven months of the year 1866 was open for business, and that land certificates were during such period located and returned to the General Land Office from many counties and have been recognized as valid by the state.

5. STATUTES ⬅⟿219 — CONSTRUCTION — CONSTRUCTION BY LAND OFFICE.

In the construction of 6 Gammel, Laws, 669, approved December 14, 1863, suspending laws authorizing disposition of state land until close of the war, the construction by the land office authorities in opening offices for such business is entitled to great weight.

6. ADVERSE POSSESSION ⬅⟿98 — SUFFICIENCY OF POSSESSION.

The actual possession of a few acres of a tract of land by inclosure with other land owned by claimant is insufficient to put the owner upon notice that any claim of adverse possession is asserted beyond that actually fenced.

Error to Court of Civil Appeals of First Supreme Judicial District.

---

Suit by Mrs. Alice C. Fielder and others against the Houston Oil Company of Texas and others. Judgment for defendant, and plaintiff appealed to the Court of Civil Appeals (165 S. W. 48), where the judgment was affirmed in part and reversed in part, and both parties bring error. Judgment of Court of Civil Appeals affirmed in part, and reversed in part and remanded.

John Hammon, of Houston, and Oliver J. Todd, of Beaumont, for plaintiffs in error.

H. O. Head, of Sherman, and W. D. Gordon and Hightower, Orgain & Butler, all of Beaumont, for defendants in error.

Minor & Minor, of Beaumont, for defendant in error Kirby.

MONTGOMERY, P. J. This suit is an action of trespass to try title, brought by Mrs. Alice C. Fielder and others as plaintiffs against the Houston Oil Company, R. H. Kirby, and R. S. Stevens, to recover title and possession of 480 acres of land in Hardin county located and surveyed by virtue of bounty warrant No. 60 issued by the Republic of Texas to John Lewis. Originally, other parties were made defendants, but all were dismissed from the suit except those named above.

The defendants Houston Oil Company and R. H. Kirby answered by a plea of not guilty and by pleas of limitation, setting up the three, five, and ten year statutes. R. S. Stevens disclaimed as to all the land except a tract of 160 acres described in his answer by metes and bounds, and as to the said 160 acres he pleaded not guilty and the three, five, and ten year statutes of limitation. A jury was waived, and a trial by the court resulted in a judgment in favor of all the defendants.

This judgment on appeal by A. C. Fielder and others, plaintiffs, was by the Court of Civil Appeals reversed and rendered as to the Houston Oil Company and R. H. Kirby, and the judgment was affirmed in favor of Stevens as to the 160 acres of land claimed by him. 165 S. W. 48.

Mrs. A. C. Fielder and the other plaintiffs applied for a writ of error which was granted by the Supreme Court. The Houston Oil Company and R. H. Kirby also applied for a writ of error which was granted. The bounty warrant, by virtue of which the land was located, was issued to John Lewis and was a valid land warrant. It was assigned to Joel Burt on November 6, 1857, and the plaintiffs Alice C. Fielder and others are the heirs of Joel Burt. The certificate was located on the land in controversy on July 21, 1866, and the certificate, together with the field notes of the survey, was returned to and filed in the General Land Office on August 1, 1866. In these field notes, the distance of one of the calls was omitted, and the field notes were returned to the surveyor for correction. The corrected field notes were returned to the General Land Office and filed therein on June 7, 1867.

This location was made on vacant and unappropriated public domain, but the map then in use in the Land Office showed that the land covered by the location was included in the Lemuel Watson and Maria Zimines grants, both of which were "titled" lands. The map was erroneous, and, in fact, neither of the grants above named covered or included any part of the land surveyed by virtue of the Lewis certificate.

The defendants the Houston Oil Company and R. H. Kirby claim title under a junior location on which patent was issued in the year 1901. The claim of Stevens depends entirely upon limitation.

Other facts that may be necessary will be stated in the opinion.

Opinion.

[1, 2] The first claim of the Houston Oil Company and Kirby is that the location of the Lewis certificate was void for the reason that the same was located upon "titled land," as that term is used in the Constitution of 1869, art. 10, § 3, and that the location also falls within the inhibition of article 14, § 2, of the Constitution of 1876.

Article 10, § 3, of the Constitution of 1869, declares null and void "all certificates for land located after the 30th day of October, 1856, upon lands which were titled before such location of certificate."

The words "titled lands" are used both in the Constitution of 1869 and the Constitution of 1876, and these words have under the decisions of this state a well-defined legal meaning. As stated by the court in the case of Winsor v. O'Conner, 69 Tex. 576, 8 S. W. 521:

"Land is said to be 'titled' when a patent is issued, which, on its face, is evidence that the state has parted with its right and conferred it on the patentee."

Under this and many other decisions of our Supreme Court, after a patent has in fact been issued by proper authority, the lands included within its boundaries are "titled lands," although the patent may, by reason of some fact not appearing on its face, be void. The case cited above fully discusses the meaning of the constitutional provision forbidding location on titled lands, and, on the authority of that case, we hold that the Court of Civil Appeals properly decided that the land upon which the Lewis certificate was located was not titled lands at the time of its location within the meaning of the constitutional provision.

The provision of the Constitution of 1869 above referred to is a retroactive provision and purports to affect the validity of loca-

tions made prior to the adoption of the Constitution. If the owners of the Lewis certificate had, prior to the adoption of the Constitution in accordance with the laws then in force, made a valid location of the certificate, they acquired thereby a vested right in the land, and the constitutional provision quoted could not be given the effect of destroying such right, as the same would be protected by the provisions of the Fourteenth Amendment to the Constitution of the United States, prohibiting any state from depriving any person of life, liberty, or property without due process of law.

Article 14, § 2, of the Constitution of 1876, is prospective in its application and has no reference to locations made prior to its adoption, and therefore has no application to this case.

[3] We now come to what seems to be the principal question in the case. It is strenuously contended that the location of the Lewis certificate was made at a time when such location was prohibited by law and was therefore void and conferred no right to the land.

This contention is based upon an act of the Legislature of the state of Texas passed and approved December 14, 1863, which provided:

"That until six months after the close of the present war all laws authorizing the location, survey, or sale of any public land or land script, except in cases herein provided for, are hereby suspended." 6 Gammel, Laws, 669.

The exceptions mentioned in the act do not include bounty warrant locations like the one in controversy. The Houston Oil Company and Kirby contend that, under the provisions of this act, the location of the Lewis certificate was void for the reason that the Civil War did not close until it was declared closed by the proclamation of the President of the United States, promulgated on August 20, 1866, declaring it closed on that date as to the state of Texas. The Court of Civil Appeals, in its opinion, 165 S. W. 48, has gone into this question at great length; and we think that the holding of said court that the Civil War, as contemplated by the act of December 14, 1863, closed at the time actual hostilities ceased and the authority of the United States government was re-established throughout the state, is correct. In view of the fact that the Court of Civil Appeals has decided this question as we think it ought to be decided, we think it sufficient to refer to and adopt that part of the opinion of the Court of Civil Appeals dealing with the construction and effect of the act referred to.

[4, 5] In addition, however, to the reasons given by the Court of Civil Appeals, we think it proper to refer to the fact, of which we are authorized to take judicial notice, that the land office of the state of Texas during the first seven months of the year 1866 was open for business, and that land certificates were, during said period, located and returned with the field notes to the General Land Office from many counties in the state, and that all such locations were recognized by the proper authorities at that time as being valid and legal and have been recognized by the state as such at all times since. We think this practical construction by the proper authorities of the act of December 14, 1863, is entitled to great weight, and that titles which have been recognized by the state for more than 50 years should not be disturbed, unless required by the strongest reasons. We do not think such reason exists in this case. What is said above disposes of the case in so far as the Houston Oil Company and R. H. Kirby are concerned. The only other question arises out of the claim of Stevens to a tract of 160 acres described in his pleadings by metes and bounds. This claim is based upon the ten-year statute of limitation.

[6] The facts, as we gather them from the record, are that in 1884 one Henry Teel acquired five acres of land on a survey adjoining the land in controversy, and at that time established his home on said five-acre tract and cleared and put in cultivation some eight or ten acres during the first year, evidently encroaching either upon the land in controversy or other adjoining land. According to his testimony, he afterwards added to his cultivated land and inclosed additional lands therewith.

His dwelling house, barn, and all outbuildings used in connection therewith were located on the 5-acre tract, which he in fact owned. About the year 1884, Henry Teel attempted to procure the 160 acres of land now claimed by him as a pre-emption and caused the same to be surveyed. He testified that he claimed this 160 acres under his pre-emption claim for three years and then abandoned this claim and thereafter claimed it by limitation. He further testified that in 1903 he sold the land claimed by him to R. S. Stevens and thereafter, until the trial of this case, occupied and held it as the tenant of Stevens. We understand from his testimony that his inclosure included, in connection with other lands owned by him, about 2 acres of the land in controversy. The record fails to show the boundaries of that part of land in controversy actually inclosed by Teel. The district court found as a fact that 15 or 20 acres of land was inclosed by Teel, but fails to find how much of this inclosure was a part of the land in controversy. The Court of Civil Appeals held, under these facts, that the possession of Teel was of such a character as entitled him to hold, by limitation, the 160 acres of land surveyed for him under his attempted pre-emption.

In Bracken v. Jones, 63 Tex, 186, it was

held that, where the dwelling houses and buildings used in connection therewith were situated on a tract of land adjoining the land in controversy and the only possession of the land in controversy was an encroachment by fencing a few acres thereof, such possession was not sufficient to vest title by limitation to any land except that actually inclosed. To the same effect is Holland v. Nance, 102 Tex. 177, 114 S. W. 346. In Bender v. Brooks, 103 Tex. 329, 127 S. W. page 170, Ann. Cas. 1913A, 559, Justice Brown, in a case similar to the one under consideration, used this language:

"The evidence is sufficient to raise the issue of limitation of five years, if the character of the possession was adverse to the true owner of the land. To simplify the question, we will consider it as if Mason had been in possession in person. In order for possession to be adverse to the true owner, it 'must be of such a character as to indicate unmistakably an assertion of claim of exclusive ownership in the occupant.' Mhoon v. Cain, 77 Tex. 318, 14 S. W. 243; Bracken v. Jones, 63 Tex. 186; Holland v. Nance [102 Tex. 177], 114 S. W. 346; McCarty v. Johnson, 20 Tex. Civ. App. 187, 49 S. W. 1098. In Bracken v. Jones, the possessor, who claimed by limitation a larger tract, had fenced land owned by himself, and on which he resided, including in his field 4 acres of an adjoining tract. The possession continued sufficient time to give title under the statute, and the party in possession claimed the entire tract of which he had the 4 acres inclosed. This court held that, as to the land not under fence, there was no such adverse possession as would give notice to the true owner that the occupant intended to claim the entire survey. In the case now before us, as in the case just quoted, the house and all improvements, except a portion of the fencing, was upon another tract of land. The use of the field was incidental to the use of the house, and the possession of the field in its entirety could be referred only to the possession of the house and the other land inclosed within the field. The inclosure gave not the slightest intimation to the true owner that the person who was residing upon the 30 acres of the adjoining tract was setting up claim to the entire survey of 663 acres. The evidence does not tend to prove a possession adverse to the owner of the Dunman survey. We therefore hold that the evidence submitted with this certificate did not justify the court in submitting the issue of limitation to the jury."

The principle announced in the foregoing cases, we think, is applicable to this case, and precludes any recovery by Stevens by virtue of the statute of limitation, except that part of the land actually inclosed by him. The possession of a few acres by fencing the same in connection with land in an adjoining survey by the resident owner of the contiguous land, we do not think is sufficient to put the owner upon notice that any claim is asserted beyond the land actually fenced.

This conclusion is not in conflict with the case of Smith v. Jones, 103 Tex. 632, 132 S. W. 469, 31 L. R. A. (N. S.) 153, cited by the Court of Civil Appeals. The case cited was not a case of mere encroachment by inclosure of a part of an adjoining survey. In that case, the occupant actually had a dwelling house and other buildings used in connection therewith on the tract of land claimed by limitation, and the land so claimed by limitation was actually used as a home. The claimant in that case resided on the land in controversy, and the extent of his claim was shown by the fact that he had caused an actual survey to be made of 160 acres which included his residence and other outbuildings. We think the facts of the case of Smith v. Jones clearly distinguish it from this case.

Our conclusion is that the Court of Civil Appeals erred in affirming the judgment of the trial court in favor of Stevens as to the 160 acres claimed by him. The most the facts authorized was a judgment in his favor for the land actually included within the inclosure.

We are unable from the record to determine the boundaries of the land so inclosed. We will not, therefore, advise that the judgment be here rendered as between the plaintiffs and Stevens, but we are of the opinion that the judgment of the Court of Civil Appeals in favor of the plaintiffs A. C. Fielder and others, against the Houston Oil Company and R. H. Kirby, should be affirmed, and that the judgment of the Court of Civil Appeals and of the trial court in favor of R. S. Stevens should be reversed and the cause remanded for a new trial, with instruction to the trial court to hear evidence, if offered by Stevens, showing the actual amount of the land in controversy included within the inclosure of Stevens and render judgment in his favor for the land so inclosed, and to render judgment for plaintiffs for the remainder of the land in controversy.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

The case is correctly remanded upon the ground stated by the commission in its opinion.