## CHAISON et al. v. STARK et al.
### No. 1927.

Court of Civil Appeals of Texas. Beaumont.
April 4, 1930.

Rehearing Denied May 28, 1930.

Second Motion for Rehearing Overruled
June 11, 1930.

Todd & Pipkin, Jack M. Moore, and Geo. E. Holland, all of Beaumont, and J. T. Adams, of Orange, for appellants.

Kennerly, Williams, Lee, Hill & Sears and Andrews, Streetman, Logue & Mobley, all of Houston, for appellees.

WALKER, J.

By special act of the Legislature approved January 20, 1860 (Sp. Laws 1860, c. 38), a land certificate for one league of land was awarded G. B. Brownrigg. Under authority of this act Land Certificate 147 was duly issued to Brownrigg on January 20, 1860. On the back of this certificate, dated January 21, 1860, is a transfer by Brownrigg to Charles Baldwin of a one-half interest in the certificate. By deed dated the 25th day of January, 1860, Brownrigg conveyed the other one-half interest to his three daughters, Amarillo Brownrigg, Mrs. Laura Hopkins, and Mrs. Susan T. Davis. The daughters in the order named, by their separate deeds on, to wit, the 11th day of October, 1860, 3rd day of November, 1860, and 11th day of October, 1860, conveyed their respective interests to Charles Baldwin and Edwin E. Chubbuck. Under this chain of transfers Baldwin held a three-fourths interest in Certifi-

cate No. 147, and Chubbuck a one-fourth interest. On the 27th day of December, 1860, "Baldwin and Chubbuck, per Chubbuck," wrote Joshua Harmon requesting that a designated tract of land be duly surveyed for them under this certificate. On January 8, 1863, A. H. Reading, district surveyor, made the survey as requested, but the field notes of the survey were not returned to the General Land Office until January 20, 1864, twelve days after the time required by the law for their return. The land thus surveyed contained 5,081,242 square varas of land situated on Sabine river below the city of Orange in Orange county and at the time it was thus surveyed was unappropriated public domain. Charles Baldwin died February 18, 1874. No transfer out of Baldwin was offered in evidence on the trial of this case, nor out of any of his heirs. This suit was brought in trespass to try title by appellants, the heirs of Charles Baldwin, against appellees, who held under junior surveys, to recover the title and possession of the land above described, as having been surveyed for Charles Baldwin and Chubbuck under Certificate No. 147. The facts stated constituted their chain of title.

Appellees' defense was the usual demurrers and plea of not guilty, together with pleas of the three and five year statutes of limitation (Rev. St. 1925, arts. 5507, 5509), and special defenses supported by the following additional facts: By power of attorney dated the 1st day of December, 1873, Chubbuck authorized William F. Clark of Travis county to withdraw Certificate No. 147 and to obtain another certificate in lieu thereof by the process then known as floating, and to locate the same and obtain patents thereon. By another power of attorney undated but acknowledged the 12th day of December, 1873, Chubbuck authorized Clark to bargain, sell, release, and convey his interest in this certificate. Baldwin was in no way a party to either of these instruments, nor on the face of the instruments did Chubbuck purport to represent Baldwin. On the face of the certificate was written: "Copy of certificate floated in lieu of the original for relocation. January 7, 1874. Delivered to William F. Clark. Jacob F. Kuechler, Commissioner." The original certificate was duly located upon five tracts of land; three in Liberty county, and two in Orange county, one of which was the tract in controversy. All these locations were made prior to the date on which the original certificate was floated, as stated above; that is, prior to January 7, 1874. On January 7, 1874, Commissioner Kuechler certified that the five tracts of land just referred to were in conflict with prior surveys, and on that date, as above stated, floated a copy of the original certificate for the purpose of relocation. On

January 20, 1874, Clark, as attorney in fact for Baldwin and Chubbuck, acknowledged receipt of this copy of the original certificate, but no power of attorney from Baldwin to Clark was offered in evidence. By deed dated April 15, 1874, Clark, as attorney in fact for Baldwin and Chubbuck, conveyed the certificate to John W. Lawrence, who, by deed dated April 15, 1874, conveyed the certificate to William D. Hoskins and S. W. Allen. The copy of the certificate was duly located upon a league of land in Brazoria county by Hoskins, and Allen and patent issued to them for said land on the 13th of October, 1874, as assignees of C. B. Brownrigg. The facts stated constitute the complete history of Certificate No. 147.

Appellees' chain of title to the land in controversy was as follows: On August 30, 1881, Confederate Scrip 689 for 1,280 acres was issued to Mrs. Lizzie Higginbotham. By virtue of the portion of this certificate allotted to the school fund, the Higginbotham certificate was located on a part of the land in controversy and upon due application made by W. B. Wortham sold to him. Wortham conveyed the land thus purchased by him to John H. Kirby in 1902, and Kirby, on April 4, 1902, executed his obligation to the state in payment thereof. Mr. Kirby, by proper conveyances, conveyed his interest in this land to J. W. Link, for which Mr. Link paid a valuable consideration. Link's title passed to E. W. Brown and W. H. Stark, and subsequently patent was duly issued to Brown and Stark. Brown and Stark were sued as owners of the land and they vouched in their vendors on their warranties. The additional pertinent facts will be given in connection with the discussion of the legal propositions upon which the appeal is based.

The case was duly submitted to the jury by the court only upon the issues of three and five years limitation, which were found by the jury in favor of appellees. After the return of the verdict, judgment was rendered in favor of appellees, on their motion, for the land in controversy, from which appellants have duly prosecuted their appeal.

### Opinion.

We sustain appellants' assignments against the findings of the jury on the issues of three and five years limitation. (Rev. St. 1925, Arts. 5507, 5509). There is no evidence in the record to support these findings. None of the appellees were ever in possession of any of the land in controversy, nor was any holding shown under them or in their names. The only evidence of possession was by a sawmill corporation in which some of appellees owned stock. But this holding, even if of an adverse nature, was for the benefit of the corporation and not appellees. However, we think the holding of the corporation was that of a mere encroachment. The evidence showed that without knowing the exact location of the line between the land in controversy and the land of the corporation, sawdust and a small amount of lumber was stacked upon this land. Without reviewing the testimony further, the holding shown by the testimony falls within the doctrine of Fielder v. Houston Oil Co. (Tex. Com. App.) 208 S. W. 158; Id. (Tex. Com. App.) 210 S. W. 797; Holland v. Nance, 102 Tex. 177, 114 S. W. 346; Smith v. Jones, 103 Tex. 632, 132 S. W. 469, 31 L. R. A. (N. S.) 153; Bracken v. Jones, 63 Tex. 186.

Since only the issues of limitation went to the jury, appellants contend that all other issues raised by the pleadings and the evidence were either waived by appellees or, upon a proper construction of the judgment, found by the trial court against them. This proposition is true only in so far as it involves issues of fact. All issues of fact not submitted to the jury and not requested by appellees and not collateral to the issues of limitation were waived. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. But the issues of law were not waived. Where the issue is one of law, that is, where the evidence is undisputed and only one inference or conclusion can be drawn therefrom, the trial court should either instruct the jury peremptorily thereon or carry this issue through the trial and determine the same as a question of law upon motion for judgment on the verdict. So it is correct to say that the undisputed fact issues are not waived by the failure to request their submission; and though the issues of fact that go to the jury may be found against the litigant, yet if, on the undisputed fact issues, not involved in the issues submitted, he is entitled to judgment, the court may disregard the fact findings and give him judgment as a matter of law; and where the jury's answers to the issues submitted have no support, as in this case, the judgment should not be reversed provided it was properly rendered upon the issues of law. This is necessarily so because a party may have more than one ground of recovery or defense. If he sustains one ground, as a matter of law, he should have judgment though the jury find against him on all other issues. So in this case if appellees established a defense, as a matter of law, it was not waived by the failure to request its submission to the jury nor by the failure to request the court to charge peremptorily in their favor thereon, but they now may rely upon it in support of their judgment. Since the trial court did not file separate conclusions of fact and law, giving the specific grounds upon which its judgment was based, we must affirm the judgment if any issue reflected by the record is sufficient in law to give it support. While the parties do not have the absolute right to require the trial court to file conclusions of fact and law in aid of the jury's verdict, the importance of

such conclusions is illustrated by the action of the trial court in Mackechney v. Temple Lumber Company, 197 S. W. 744, by this court, and the same case by the Commission of Appeals, 228 S. W. 177. This brings us to a discussion of the law on the undisputed facts.

Appellants assert that the judgment of the trial court should be reversed and judgment here rendered in their favor because they say, under the undisputed evidence, the land in controversy was duly appropriated and severed from the public domain under the Brownrigg certificate and, under the undisputed evidence, the title thereto is now held by them as heirs of Charles Baldwin. It is a sound proposition to say that the location of a certificate upon vacant unappropriated public land merged the certificate in the land and after such location the certificate could not be reconverted into personalty by any effort to float it. Adams v. Railway Co., 70 Tex. 252, 7 S. W. 729; New York & T. Land Co. v. Thompson, 83 Tex. 169, 17 S. W. 920; Jones v. Lee, 86 Tex. 25, 22 S. W. 386, 1092; Massey v. Railway Co., 7 Tex. Civ. App. 650, 27 S. W. 280. Under the law in force when the land in controversy was surveyed under Certificate No. 147, the only cause for which a certificate, when once filed on land, could be floated and located elsewhere, was upon a showing that the location was in conflict with an older title, and then only to the extent of such conflict. New York & T. Land Co. v. Thompson, supra. Under these authorities it is clear that any subsequent floating of this certificate, after a valid location, was illegal. So appellants' proposition rests upon the legality of their survey.

Appellees deny the legality of this survey for the following reasons: First, they say it was void because made on the 8th of January, 1863, and not returned to the General Land Office until January 20, 1864, more than twelve days after the time required by law for its return. Appellees have correctly construed the law of 1852. Under the provisions of this act the failure to make return of the field notes within twelve months after the survey was made rendered the survey absolutely void. This statute is set out in House v. Talbot, 51 Tex. 468, and Adams v. Railway Co., supra. The following additional authorities give this statute the construction contended for by appellees: Frederick v. Hamilton, 38 Tex. 342; Jones v. Lee, supra. But, conceding all that appellees claim under this proposition, the defect was cured by the subsequent legislation set out in Adams v. Railway Co., supra. We give only section 2 of the Act of April 25, 1871, 6 Gammel's Laws of Texas, 962, directly in point, giving vitality to appellants' survey because their field notes were on file in the General Land Office when this act was passed. Section 2 was as follows: "That all surveys, properly made, by virtue of genuine or valid land certificates, which surveys, together with the certificates by virtue of which they were made, have been returned and are now on file in the General Land Office, and not in conflict with any other valid land claim, shall be deemed valid, and the Commissioner of the General Land Office is hereby authorized and required to issue patents for the same." As we construe Adams v. Railway Co., the constitutionality of this act was directly sustained.

Appellees' second attack on the legality of this survey is based upon the fact that appellants failed to prove that Brownrigg, at the time his field notes were returned to the General Land Office, paid the government fees prescribed by the act granting him his certificate. This burden was placed upon him by the express terms of the act. This proposition is not sound for two reasons: (a) The defect was cured by the remedial legislation just discussed. (b) Since the law required that the fees be paid, appellants are entitled to the presumption that the proper officer collected these fees before filing the field notes.

Appellees' third attack is based upon their proposition that the certificate was void because not examined, passed on, and recommended by the Traveling Board of Land Commissioners nor established by a judgment of the district court. There was no evidence on these issues. But this proposition, which is the law when properly invoked, Pope v. Anthony, 29 Tex. Civ. App. 298, 68 S. W. 521, has no relation to a certificate issued under authority of a special act of the Legislature specially authorizing the issuance of the very certificate in question. The sovereign power of the Legislature, in granting the certificate, was not subject to review or nullification by any board or court.

Appellees' fourth proposition assumes that the certificate was legally floated and legally located upon the Brazoria county league. It is their contention that appellants are required by law to follow their certificate to the Brazoria county land. This proposition would have support only on the theory that the certificate was lawfully floated. Howth v. Taliaferro (Tex. Civ. App.) 289 S. W. 119; Southwestern Settlement & Development Co. v. Village Mills Co. (Tex. Civ. App.) 245 S. W. 975, 979. But since the certificate was not lawfully floated this proposition passes out of the case.

Appellees' fifth proposition against the legality of this survey is based upon section 5, Act of the Legislature of June 2, 1873, Gammel's Laws of Texas, vol. 7, page 633, reading as follows: "When the Commissioner cancels a patent or permits the floating of a certificate, he shall not deliver the original certificate, but it shall remain in its original file, but shall give the interested party a copy of the original, under his hand and

seal of office, in his certificate, to which he shall state that the original patent has been canceled, or the certificate floated, as the case may be, stating the county where the land is situated covered by said canceled patent or floated certificate, and that the copy is given in lieu of the original, but without any prejudice to the rights of any. person by virtue of such patent or certificate." Under this act appellees contend that the floating of Certificate No. 147 was expressly authorized, and since the act of floating occurred prior to Baldwin's death, they assert that appellants cannot now complain of what was done. There are two answers to this proposition: (a) This article did not authorize the floating of a certificate after it had been legally located, as was this certificate, but merely provided the manner of floating where it had been illegaly located. (b) The floating was illegal because Brownrigg was neither a party nor a privy to the attempt of Chubbuck to authorize its floating. In Jones v. Lee, supra, the Supreme Court held that a cotenant could not float a certificate, nor any. part of it, without the consent of the other cotenants.

█ If not entitled to recover because of the defects in appellants' chain of title, then appellees further assert that the judgment in their favor should be sustained on the ground that they were innocent purchasers under the junior Higginbotham survey. Admittedly they own that title. They purchased the land under that title, paying value therefor, without actual notice of appellants' claim. But the issue of innocent purchaser was not in the case. Appellants claim was on record in the records of Orange county and on file in the General Land Office when the Higginbotham certificate was located upon this land and when appellees purchased. Therefore they had constructive notice thereof. Hill v. Moore, 62 Tex. 610, cited by appellees, recognizes that constructive notice is sufficient to defeat the claim of innocent purchaser. But appellees are denied this defense under article 14, § 2 of the Constitution, which provides: "That all genuine land certificates heretofore or hereafter issued shall be located, surveyed or patented, only upon vacant and unappropriated public domain, and not upon any land titled or equitably owned under color of title from the sovereignty of the state, evidence of the appropriation of which is on the county records or in the general land office." Since appellants' survey was made under a valid certificate and the defects therein were cured by subsequent legislation, and since it was located on. vacant unappropriated public domain, and the evidence of the appropriation was in the records of Orange county and also in the General Land Office, all the conditions of the constitutional provision just quoted were fully complied with. Under the Constitution this land was "owned under color of title from the sovereignty of the State" and was not subject to appropriation by the Higginbotham certificate. It thus appears that the title under which appellees claim is absolutely void and insufficient in law to support the defense of innocent purchaser.

█ Appellees contend, in effect, that at least they showed an outstanding title in those holding under Clark, as attorney in fact for Baldwin. This proposition is not available to them as cross-plaintiffs, in which capacity they plead affirmatively against appellants, because their title as cross-plaintiffs was void. But, as defendants in appellants' cause of action, it would be a good defense to show that appellants had been divested of their title; thus establishing, as defendants, the issue of an outstanding title. This proposition is presented as one of law. On this theory the contention cannot be sustained. While it is true the land was surveyed in 1863 and Baldwin did not die until 1874 and neither he, in his lifetime, nor his heirs, since his death, ever claimed this land or paid any taxes thereon or exercised any domain whatever over it, their nonclaim, until shortly before this suit was filed, being as complete as if they had no interest therein, the presumption of a power of attorney under which Clark could have lawfully sold the land was not established as a matter of law. We think this conclusion follows from what was said in Unknown Heirs v. Navigation District (Tex. Civ. App.) 6 S.W.(2d) 396, and authorities therein cited.

█ As the fifth of five questions, all written on the same piece of paper and signed by counsel as one instrument, appellees requested the court to submit the following question to the jury: "Was the action of William F. Clark, purporting to act as the attorney in fact for Charles Baldwin in purporting to sell the interest of Charles Baldwin in the certificate for land located by virtue thereof issued to George B. Brownrigg, authorized by the said Charles Baldwin during his lifetime, or authorized or ratified by his heirs and legal representatives after his death."

The other four questions were on the issue of innocent purchaser, and, under what we have said above, were correctly withheld from the jury. Therefore, there was no error in refusing to submit this question. This issue was requested, as were the special issues in Medford v. Kimmey, 298 S. W. 140, 141, where we said: "The five special charges forming the basis of appellant's assignments of error were submitted to the court on one sheet of paper, constituting one instrument, not signed separately by counsel, but signed by them at the end of the instrument. In this condition, the charges cannot be reviewed. Article 2186, Revised Statutes 1925; Western Union Tel. Co. v. Johnson, 16 Tex. Civ. App. 546, 41 S. W. 367; White v. Bell (Tex. Civ.

App.) 242 S. W. 1082; McBurnett v. Smith (Tex. Civ. App.) 286 S. W. 599."

It follows that the judgment of the trial court must be reversed, and judgment here rendered in favor of appellants.

Reversed and rendered.

## On Rehearing.

 Appellee W. H. Stark had a cross-action in the lower court against his warrantors to recover the purchase price paid by him for the Higginbotham survey in the event he lost the title. Having recovered title in the lower court, it followed that he had no cause of action against his warrantors. On original submission on the issue of title, we reversed the judgment of the lower court and rendered judgment against Mr. Stark; but denied him recovery against his warrantors because, on the statement made in his brief, there was no showing as to the amount paid by him for the Higginbotham survey. On rehearing he has supplemented his original brief by showing by the recitations in the warranty deed to him that he paid for this land on the 23d day of March, 1910, the sum of $4,374. As between Mr. Stark and his warrantors this recitation in his deed was sufficient proof of the amount and of the payment of the purchase price. Allison v. Pitkins, 11 Tex. Civ. App. 655, 33 S. W. 293. But if that be conceded the warrantors insist further that Mr. Stark cannot have judgment against them because the proofs show that subsequent to his purchase he sold 33.69 acres of this land, and there was no proof of the proportionate value of the land sold to the unsold portion. We think the warrantors are in error in their construction of the evidence. The proof was that all the land was marsh land; quoting one of the witnesses, "it was all marsh and had no high land on it, and could not have served any useful purpose, except as a water front and this had no value at that time." One boundary of the land was near the city of Orange, but, because the land was marsh, this did not give the part near the city any greater value in 1910. We say this because, under the proof, none of the land in 1910 could be used for any useful purpose. On authority of Northcutt v. Hume (Tex. Com. App.) 212 S. W. 157; Gass v. Sanger (Tex. Civ. App.) 30 S. W. 502; Hollingsworth v. Mexia, 14 Tex. Civ. App. 363, 37 S. W. 455; and First Nat. Bank v. Brown (Tex. Com. App.) 15 S.W.(2d) 563, these facts made out a prima facie case of uniform value of the land and is sufficient to support a judgment in Mr. Stark's favor for the purchase price, less the proportionate value of 33.69 acres sold by him. Where the grantee sells a part of the land the rule is that he can recover against his warrantors only the same proportion of the purchase price as the value of the part unsold bears to the whole premises. Hynes v. Packard, 92 Tex. 44, 45 S. W. 562. As to this amount we accept Mr. Stark's calculation showing $4,143.76. If there is error in this calculation, it is against Mr. Stark's interest. Interest is not allowed on this sum because, on the facts of this case, Mr. Stark concedes that he is not entitled to interest. It follows that Mr. Stark's motion for rehearing on the issue of warranty is granted and judgment is here rendered in his favor against his warrantors for the sum named, to wit, $4,143.76.

On the issue of title appellees insist that the Act of April 25, 1871, should be construed liberally in their favor. They say that public rights cannot be treated as relinquished or conveyed away by inference or legal construction. Quoting Judge Phillips in Taylor v. Sanford, 108 Tex. 340, 193 S. W. 661, 5 A. L. R. 1660, they say further: "No person can be made a grantee of property against his will." These are all sound legal propositions. The Act of April 25, 1871, where open to construction, should be construed liberally to support the Higginbotham survey. Public rights cannot be treated as relinquished or conveyed away by inference or legal construction. No person can be made a grantee of property against his will. But these propositions have no relation to the facts of this case. The Act of April 25, 1871, as we have applied it to the facts of this case, is clear and unambiguous and calls for no construction. Appellants' survey fell clearly within its terms as detailed in section 2, quoted in the original opinion, and it followed, as a matter of law, by the express terms of the act, that the survey was valid.

 But appellees say this construction of the Act of April 25, 1871, makes Baldwin and Chubbuck grantees against their will. Since they did nothing to accept its provisions, it is contended they were not entitled to its benefits. The proposition is that no survey was validated by this act except where the claimant, by something done by him, accepted its provisions, thereby making himself a party to the offer of the state to validate his survey; that, without an acceptance, the offer of the state to validate defective surveys was merely unilateral, subject to revocation after a reasonable time; that as between the state and appellants the offer to validate this survey was revoked by article 16, § 18, of the Constitution of 1876; and that any other construction would make Baldwin and Chubbuck grantees against their will, taking from them the right to abandon their void location on this land and to relocate their certificate upon other land of their choice.

 Appellees are in error in reading into this act the requirement that Baldwin and Chubbuck manifest their intention to accept its provisions by an affirmative act of acceptance. The act did not impose that duty

upon them, and for us to do so would be judicial legislation. These old grants had been the subject of much legislation prior to the passage of this act, reviewed by the Supreme Court in Adams v. Railway, cited in our original opinion, some of which did require an act of acceptance by the claimant. By omitting this condition from this act the Legislature clearly manifested an intention to cure the defects in these old surveys without an act of acceptance by the claimants. Of course, where the claimant had abandoned his void survey, the act did not inure to his benefit, but if the survey had not been abandoned all defects were cured. The certificate located upon the land was merged into the land by the provisions of the act, severing the land thus surveyed from the public domain and vesting the claimant with title thereto. That Baldwin and Chubbuck had not abandoned this survey is manifest from the provisions of section 2 of the act, quoted in the original opinion. This section enumerates the facts necessary to constitute a claim to the land. Where these facts existed there was no abandonment, and in this case all the facts required by section 2 did exist. Thus, as required by section 2, this survey was properly made by virtue of a valid land certificate, which survey with the certificate had been returned and was at the time of the passage of this act on file in the General Land Office, and the land covered by the survey was not in conflict with any other valid land claim. It follows that Baldwin and Chubbuck, by permitting the certificate to remain in the Land Office, manifested an intention not to abandon their survey. So the act did not make them grantees against their will, but only perfected their title. In our original opinion we say that Baldwin, after the survey was made and the certificate and field notes returned to the Land Office, never "claimed this land." We did not mean by this conclusion that he had abandoned his claim, but only that he did nothing, after returning his field notes, to assert his claim.

If this conclusion is sound, Baldwin's title became a vested right in him immediately after the passage of this act and was not subject to revocation by the provisions of the Constitution of 1876. Appellees would deny the force of this argument by saying that appellants' grant was declared void by section 2 of article 10 of the Constitution of 1869. By express language this Constitution did declare void defective surveys of the character of this one, but it took nothing from the claimants of these surveys, because the mere failure to make due return of the field notes rendered the surveys void. They were therefore void independent of the Constitution of 1869. However, there was nothing in that Constitution that took from the Legislature the power to pass remedial legislation, curing these defects. That was the purpose of the Act of April 25, 1871, manifested by its express language. We think, as said in the original opinion, that Adams v. Railway directly sustains its constitutionality. But independent of what was said in that case, and as an original proposition, the act was constitutional because its enactment was not in contravention of any constitutional limitation.

All motions for rehearing are overruled except the motion on the issue between Mr. Stark and his warrantors, which is granted, as above indicated.